## HAASE v. DePREE.

1. PHYSICIANS AND SURGEONS—MALPRACTICE—SUFFICIENCY OF COMPLAINT.

   General allegations of negligence in complaint in malpractice action, which do not include a statement of facts upon which plaintiff relies and which do not inform the defendant of the nature of the cause he is called upon to defend is not a sufficient complaint (GCR 1963, 111.1).

2. NEGLIGENCE—RES IPSA LOQUITUR.

   The doctrine of *res ipsa loquitur* is an uncertain blend of more fundamental concepts of law and generally involves some or

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 10]  41 Am Jur, Physicians and Surgeons § 124.
[2]  38 Am Jur, Negligence § 295 *et seq.*
[3]  38 Am Jur, Negligence § 285 *et seq.*
[4]  41 Am Jur, Physicians and Surgeons §§ 92, 93.
[5, 9]  41 Am Jur, Physicians and Surgeons §§ 126, 127.
[6, 7]  41 Am Jur, Physicians and Surgeons §§ 128–130.
  Necessity of expert evidence to support an action for malpractice against a physician or surgeon.  81 ALR2d 597.

all of the conditions (1) that the event must be of a kind which ordinarily does not occur in the absence of someone's negligence, (2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant, (3) that the event must not have been due to any voluntary action or contribution by plaintiff, or (4) evidence of the true explanation of the event must be more readily accessible to defendant than to plaintiff.

3. SAME—EVIDENCE.

The problems presented by a given negligence case should be resolved by the application of the general law of negligence and evidence evolved from decisions of the Supreme Court, not by the refinement and compartmentalization of the traditional concepts of the law of negligence and of evidence or by dispute over a rule or doctrine.

4. PHYSICIANS AND SURGEONS — DIAGNOSIS — AORTOGRAPHY — NEGLIGENCE.

Aortography is a relatively new diagnostic procedure, and, so far as layman are concerned, it cannot be said that injury results only when there has been negligence in its use.

5. SAME—MALPRACTICE—RES IPSA LOQUITUR.

Aortography is a matter outside the realm of a layman's experience, hence, common knowledge as a basis for the application of the doctrine of *res ipsa loquitur* does not exist.

6. SAME—MALPRACTICE—EXPERT TESTIMONY—AORTOGRAPHY.

Expert evidence is essential to support an action for malpractice against a physician or surgeon for his use of procedure known as aortography for diagnostic purposes.

7. SAME—MALPRACTICE—EXPERT TESTIMONY—STANDARD OF SKILL.

Expert evidence would not be required in a malpractice case where the lack of professional care is so manifest that it would be within the common knowledge and experience of the ordinary layman that the conduct was careless and not conformable to the professional practice and care exercised in the community.

8. EVIDENCE—RES IPSA LOQUITUR—CIRCUMSTANTIAL EVIDENCE.

Rule of *res ipsa loquitur* in this State is limited to allowing, on occasion, the trier or triers of fact to infer negligence from all the circumstantial evidence present in a case.

9. PHYSICIANS AND SURGEONS—MALPRACTICE—RES IPSA LOQUITUR.

Rule of *res ipsa loquitur* may not be applied in an action of malpractice, where it is obvious that the professional care exercised in a procedure, treatment, or operation is not a matter of common knowledge among laymen and it cannot be said that injury results only where there has been negligence present.

10. SAME—MALPRACTICE—THORACIC AORTOGRAM—PLEADING.

Summary judgment for defendant in malpractice action brought by plaintiff to recover for loss of her arm as a result of an allegedly negligently performed thoracic aortogram *held*, proper, where only general allegations of negligence are contained in the count dismissed and are not therefore sufficient to state a cause of action.

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted Division 3 February 8, 1966, at Grand Rapids. (Docket No. 456.) Decided May 24, 1966.

Declaration by Barbara A. Haase against H. E. DePree for injuries allegedly caused by defendant's malpractice in performing a thoracic aortogram. Count 2 of declaration, allegedly sounding in *res ipsa loquitur,* dismissed. Plaintiff appeals. Affirmed.

*Williams & Scheuerle (Lewis R. Williams,* of counsel), for plaintiff.

*Paulson, Bennett, Palmer & Lewis (Thompson Bennett,* of counsel), for defendant.

HOLBROOK, P. J. This is an action for malpractice brought against defendant, a medical physician and surgeon. The plaintiff filed an amended count 2 to which defendant filed a motion for summary judgment. The trial judge granted the summary judgment and from the order dismissing count 2 of the complaint, plaintiff appeals. The facts are undisputed and appear to be as follows:

Plaintiff's amended count 2 claims damages for alleged malpractice. She claims that as a result of a thoracic aortogram performed by defendant that she lost circulation in her right arm and hand, which required its amputation just above the elbow. Plaintiff asserts that amended count 2 was intended to sound in *res ipsa loquitur.* The only allegations pertaining to claimed negligence of the defendant in amended count 2, are contained in paragraphs 7, 9, and 10 and are set forth in the footnote.*

In considering the allegations of plaintiff in count 2, we find in paragraph 7 it is alleged that plaintiff's arteries were in an intense and unusual degree of spasm and that she was experiencing pain during the diagnostic procedure; in paragraph 9, that defendant persisted in his effort to perform the thoracic aortogram for three hours and in paragraph 10, that immediately after the surgical procedure, the blood circulation in the right arm and hand of plaintiff did cease, all of which was a direct and proximate result of negligence on the part of de-

---

* "7. That during the course of said attempted aortogram the defendant did observe the fact that the arteries of the plaintiff through which the catheter was to pass were in an intense and unusual degree of spasm, making it difficult or impossible for the defendant to insert said catheter as desired and anticipated by said defendant; that further, during said procedure, the right forearm and hand of the plaintiff experienced intense pain, and the plaintiff did continually make complaint to the defendant of the severe and unremitting pain in her lower right arm and hand, below the site through which the defendant was inserting said catheter as aforesaid. * * *

"9. That the defendant did persist for a period of time of approximately three hours to perform said thoracic aortogram, and to insert a catheter into the artery of the plaintiff as aforesaid.

"10. That immediately following said surgical procedure, and within minutes thereof, the blood circulation in the right arm and hand of the plaintiff did cease, all of which was a direct and proximate result of negligence on the part of the defendant in performing and continuing to perform for a period of approximately three hours, the aforesaid thoracic aortogram, and negligence on the part of the defendant in the manner in which said thoracic aortogram was performed, and further as a direct and proximate result thereof the loss of blood circulation in said right hand and arm, the right hand and arm of the plaintiff did die, necessitating its amputation just above the right elbow of the plaintiff."

fendant in performing and continuing to perform
the aforesaid thoracic aortogram and negligence on
the part of defendant in the manner in which said
thoracic aortogram was performed which resulted
in the amputation of plaintiff's right arm just above
the elbow.

Plaintiff does not allege any specific act of de-
fendant as being negligent, nor that the procedure
was performed in a manner contrary to or at vari-
ance with generally accepted methods of perform-
ing a thoracic aortogram by physicians and sur-
geons in the community or similar communities.
Nor does the plaintiff set forth the accepted method
of practice and procedure, in such a case.

Only general allegations of negligence are con-
tained in count 2 and are not therefore sufficient
under the ruling as laid down in the case of *Simonelli
v. Cassidy* (1953), 336 Mich 635. See, also, GCR
1963, 111.1(1).

Unless plaintiff's count 2 may be sustained be-
cause sounded in *res ipsa loquitur,* it must fall.
We turn to Prosser on Torts (3d ed), Negligence:
Proof, p 206, for enlightenment concerning its ac-
ceptance, purpose, and possible application to the
case at hand, and find stated on pp 217, 218 as fol-
lows:

"One type of circumstantial evidence, concerning
which there has been much difference of opinion,
is that which is given the name of *res ipsa loquitur.*
The Latin phrase, which means nothing more than
'the thing speaks for itself,' is the offspring of a
casual word of Baron Pollock during argument with
counsel in a case in 1863 in which a barrel of flour
rolled out of a warehouse window and fell upon a
passing pedestrian. In its inception the principle
was nothing more than a reasonable conclusion, from
the circumstances of an unusual accident, that it
was probably the defendant's fault. It soon be-

came involved, however, in cases of injuries to passengers at the hands of carriers, with the aftermath of an older decision which had held that the carrier had the burden of proving that it had not been negligent. The two principles, one concerned with the sufficiency of circumstantial evidence, the other of the burden of proof, gradually became confused and intermingled; and from the fusion there developed an uncertain 'doctrine' of *res ipsa loquitur*, which has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely. It is nevertheless accepted and applied by all of our courts, including those of South Carolina, which purport to reject it by name, Michigan, which formerly did so, and Pennsylvania, which purports to limit its application to cases in which the defendant has voluntarily undertaken some responsibility.

"The statement of this doctrine most often quoted is that of Chief Justice Erle in 1865:

" 'There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.'
\* \* \*

"The requirement that the occurrence be one which ordinarily does not happen without negligence is of course only another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience it gives rise to *an inference* that some one must have been negligent. On this basis *res ipsa loquitur* has been applied to a wide variety of situations, and its range is as broad as the possible events which reasonably justify such a conclusion." (Emphasis supplied.)

There may be justification for the statement by. Prosser that Michigan has accepted the so-called *res ipsa loquitur* rule or a modification of it by reason of two recent decisions. *Mitcham* v. *City of Detroit* (1959), 355 Mich 182; *Gadde* v. *Michigan Consolidated Gas Company* (1966), 377 Mich 117. However, its application is limited as stated by Mr. Justice ADAMS in the *Gadde Case,* on pp 123–126 as follows:

"Whether Michigan has or has not a doctrine of *res ipsa loquitur,* in spite of many attempts to clarify the situation, continues to perplex the legal profession. The use of the rule elsewhere has been such as to move Prosser to say:

" 'The Latin catchword is an obstacle to all clear thinking. It is the illegitimate offspring of a chance remark of an English judge 86 years ago, hybridized with the carrier's burden of proof. There is no case in which it has been anything but a hindrance.' Prosser, Res Ipsa Loquitur in California, 37 Cal L Rev, 183, 234.

"The doctrine of *res ipsa liquitur* is generally held to involve some or all of the following conditions:

"1. *The event must be of a kind which ordinarily does not occur in the absence of someone's negligence.*

"2. *The event must have been caused by an agency or instrumentality within the exclusive control of the defendant.*

"3. *The event must not have been due to any voluntary action or contribution on the part of the plaintiff.*

"4. *Evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.* * * *

"Formal adoption of the doctrine of *res ipsa loquitur,* whomsoever's version might be chosen, would add little to the jurisprudence of this State

or to the attainment of justice. This is not to in any way overrule our past decisions or to say that in some cases, even possibly this one, the facts will not permit nice, neat, classification under this or that version of the doctrine. Whether they do is not the consequential issue. The doctrine is merely an uncertain blend of more fundamental concepts of law. Our concern is with the proper application of such concepts from the larger fields of negligence and evidence.

"Recently Justice SOURIS had occasion, in reviewing the doctrine of assumption of risk, to vie against unnecessary compartmentalization of the law. *Felgner* v. *Anderson*, 375 Mich 23. He concluded that the traditional concepts of contributory negligence and duty of care sufficiently embrace the doctrine of assumption of risk, making retention of that doctrine redundant. *Felgner* v. *Anderson, supra,* p 56.

"So here, the traditional concepts of the law of negligence and of evidence need not be refined and compartmentalized. If the decisions of this Court are applied, not in terms of dispute over a rule or doctrine but under the general law of negligence and evidence, the problems presented by a given case will be resolved.

"Did defendant owe a duty to plaintiffs? Was there a breach of that duty by defendant which was the proximate cause of injury to plaintiffs? These are questions of substantive law which concern us. *As to proof of plaintiff's cases, the law of evidence, especially of circumstantial evidence and what may be presumed or inferred from a proper foundation of facts, will suffice."* (Emphasis supplied.)

Plaintiff urges that this Court adopt the doctrine of *res ipsa loquitur* in malpractice cases asserting that unless plaintiff may be permitted to rely upon this doctrine, she will be unable to establish her right to recover by reason of a "conspiracy of silence" on the part of the medical profession. Plain-

tiff in her brief quotes the language of the California court in the case of *Salgo* v. *Leland Stanford Jr. University Board of Trustees* (1957), 154 Cal App 2d 560 (317 P2d 170), wherein the court said (p 568):

"The application of the doctrine of the *res ipsa loquitur* in malpractice cases is a development of comparatively recent years. Before that time, the fact that medicine is not an exact science, that the human body is not susceptible to precise understanding, that the care required of a medical man is a degree of learning and skill common in his profession or locality, and that even with the greatest of care untoward results do occur in surgical and medical procedures, were considered paramount in determining whether the medical man in a given circumstance had been negligent. But gradually the courts awoke to the so-called 'conspiracy of silence.' No matter how lacking in skill or how negligent the medical man might be, it was almost impossible to get other medical men to testify adversely to him in litigation based on his alleged negligence. Not only would the guilty person thereby escape from civil liability for the wrong he had done, but his professional colleagues would take no steps to insure that the same results would not again occur at his hands. This fact, plus the fact that usually the patient is by reason of anesthesia or lack of medical knowledge in no position to know what occurred that resulted in harm to him, forced the courts to attempt to equalize the situation by, in some cases, placing the burden on the doctor of explaining what occurred in order to overcome an inference of negligence."

The Court in the *Salgo Case,* also stated on pp 570, 571, the following:

"There can be little question but that aortography and its results, because it is a relatively new diagnostic procedure, is not a matter of common knowl-

edge among laymen. * * * Very few laymen have ever heard of it. So far as laymen are concerned, it cannot be said that it is a matter of common knowledge that injury results only where there has been negligence in its use. * * * It is a matter outside the realm of the laymen's experience, and hence common knowledge as a basis for the application of the doctrine [of *res ipsa loquitur*] does not exist."

The last quote from the *Salgo Case* applies directly to the case at hand wherein a thoracic aortogram was performed by defendant on plaintiff Haase. It is also consonant with the rule that expert evidence is essential to support an action for malpractice against a physician or surgeon. *Zoterell* v. *Repp* (1915), 187 Mich 319, *Lince* v. *Monson* (1961), 363 Mich 135, *Skeffington* v. *Bradley* (1962), 366 Mich 552, *Wrobel* v. *Cotman* (1964), 372 Mich 383. The only exceptions to this rule in Michigan are found in cases where the lack of professional care is so manifest that it would be within the common knowledge and experience of the ordinary layman that the conduct was careless and not conformable to the professional practice and care exercised in the community. *LaFaive* v. *Asselin* (1933), 262 Mich 443; *Winchester* v. *Chabut* (1948), 321 Mich 114; *Higdon* v. *Carlebach* (1957), 348 Mich 363; *Barnes* v. *Mitchell* (1954), 341 Mich 7.

The applicability of the rule in Michigan appears to be limited to allowing on occasion the trier or triers of the facts to infer negligence from all the circumstantial evidence present in a case and does not extend to an action of malpractice where it is obvious that the professional care exercised in a procedure, treatment, or operation is not a matter of common knowledge among laymen and it cannot be said that injury results only where there has been negligence present.

In the case of *Lince* v. *Monson, supra,* Mr. Justice DETHMERS dealt with the policy of our courts applicable to malpractice cases wherein he stated on pp 142, 143 as follows:

"Careless professional practice must not be made immune from redress at law. This is imperative for the protection of the public. That same consideration, however, dictates that no legal barriers be erected against a doctor's proceeding, in emergency or otherwise, as his judgment directs and skills permit, for saving the life or health of the patient, without fear that his professional judgment and action shall be subjected to the test of unlearned lay judgment without the guidance of professional testimony as to compliance with professional standards and practice in the community."

We conclude that plaintiff failed to allege a cause of action in count 2 of her complaint, and therefore the trial judge properly granted summary judgment, dismissing the same.

Affirmed, costs to defendant.

BURNS and MCGREGOR, JJ., concurred.