SERAFIN v PEOPLES COMMUNITY HOSPITAL AUTHORITY

1. NEGLIGENCE—MEDICAL MALPRACTICE—WRONGFUL DEATH—CAUSA-
   TION—BURDEN OF PROOF.

   It is axiomatic that in order for a plaintiff to prevail in a medical
   malpractice action for the death of the plaintiff's decedent the
   plaintiff must show that the defendants' negligence either
   caused the condition to which death was attributed or contrib-
   uted in some other way to the decedent's death.

2. TRIAL—THEORIES—CONJECTURE—EVIDENCE—DIRECTED VERDICT.

   A plaintiff's theories become mere conjecture without some rec-
   ord-supported evidence, and where a theory of causation is
   conjecture only, a directed verdict is proper.

3. EVIDENCE—CONJECTURE—PLAUSIBLE THEORIES.

   There is a juridical basis for a determination notwithstanding the
   existence of other plausible theories with or without support in
   the evidence if there is evidence which points to any one theory
   of causation indicating a logical sequence of cause and effect;
   where there are two or more plausible explanations as to how
   an event happened or what produced it and the evidence is
   without selective application to any one of them they remain
   conjecture only.

4. NEGLIGENCE—MEDICAL MALPRACTICE—PLEADING—WRONGFUL
   DEATH—SPECIFICITY—THEORIES OF NEGLIGENCE—ABUSE OF DIS-
   CRETION—TRIAL COURT—ADMISSION OF EVIDENCE.

   The pleadings in a medical malpractice suit are required to be
   specific, dictating the exact theories of negligence to be shown,
   and it is not an abuse of discretion for the trial judge to
   disallow questions by the plaintiff relating to theories of death

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 198 *et
seq.*
[2, 3] 30 Am Jur 2d, Evidence §§ 1081, 1091.
[5] 81 Am Jur 2d, Witnesses § 494.
[6] 29 Am Jur 2d, Evidence § 840.
[7] 76 Am Jur 2d, Trial § 1181.
[8] 40 Am Jur 2d, Hospitals and Asylums § 43.

which were not pleaded; the trial court has authority to control the order and admission of evidence.

5. WITNESSES—ADVERSE PARTIES—STATUTES—CROSS-EXAMINATION— ABUSE OF DISCRETION.

A statute which allows a party to call as a witness in his behalf the opposite party and to cross-examine such witness the same as if he were called by the opposite party does not apply to a witness who is not a party at the time of trial; where the witness called by the plaintiff had been dismissed as a defendant prior to trial, the trial judge did not abuse his discretion in refusing to allow the plaintiff to cross-examine the witness as an adverse party (MCLA 600.2161; MSA 27A.2161).

6. EVIDENCE—DOCUMENTARY EVIDENCE—IMPEACHMENT—MEDICAL RECORDS—AUTHENTICITY—ABUSE OF DISCRETION.

Documentary evidence cannot be impeached by the party requiring its production; there was no abuse of discretion where the trial court refused to permit the plaintiff to question the authenticity of medical records introduced by the plaintiff.

7. EVIDENCE—HYPOTHETICAL QUESTIONS—GROUNDS FOR REJECTION— FACTS.

There are many grounds upon which a hypothetical question may be rejected and any facts assumed in a proposed hypothetical question must be somehow based upon the evidence, although not all the facts in a case need be included.

8. EVIDENCE—RECORDS—HOSPITAL RECORDS—INTERROGATORIES— DEATH CONFERENCES—PREJUDICE.

A statute which bars the release, including by subpoena, of all records, data and knowledge collected for hospital review functions does not bar the response to questions propounded in a plaintiff's interrogatories which do not ask for the notes or records from a death conference but ask only whether, when, and where such a conference was held and who took the notes and under whose custody the notes are held; however, a plaintiff was not prejudiced by the trial court sustaining the defendant's objections to those interrogatories prior to trial when all the questions were answered at trial by a witness whose testimony included the fact that he personally dictated the minutes of the conference and that the minutes were kept by the medical record department (MCLA 331.422; MSA 14.1179[12]).

Appeal from Wayne, Charles S. Farmer, J. Sub-

mitted January 15, 1976, at Detroit. (Docket No. 22836.) Decided February 23, 1976.

Complaint by Anthony Serafin, Jr., individually and as administrator of the Estate of Leona Serafin, deceased, against Peoples Community Hospital Authority, Outer Drive Hospital, Harold Krevsky, M.D., and Seymour Friedman, M.D., seeking damages for medical malpractice. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Peter Dozorc* and *Robert H. Golden,* for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier,* for defendant Seymour Friedman, M.D.

*Buesser, Buesser, Snyder & Blank,* for defendant Harold Krevsky, M.D.

*Cozadd, Shangle & Smith* (by *Daniel J. Andrews),* for defendant Peoples Community Hospital Authority.

Before: McGregor, P. J., and Bashara and Allen, JJ.

Per Curiam. Plaintiff appeals from a directed verdict granted in favor of defendants at the conclusion of proofs in a jury trial on plaintiff's complaint for malpractice.

Leona Serafin was admitted to defendant hospital by Dr. Krevsky who on May 13, 1970, performed a dilation and curettage. On the same date she was referred to Dr. Friedman who suggested surgery for a removal of a kidney stone. During

the operation which was performed May 20, unusual bleeding occurred for which drugs were administered. The patient died May 25. An autopsy report indicated deceased died as a result of thrombotic thrombocytopenic purpura (hereinafter called TTP). In his complaint, plaintiff set forth alternate theories of malpractice: (1) that the defendant doctors performed elective surgery upon the plaintiff's decedent despite the increased risk because of her abnormal blood chemistry (2) that the doctors administered various drugs which had detrimental side effects, and (3) that the plaintiff was given blood which was improperly typed, thereby causing a "transfusion reaction".

Plaintiff did not call medical experts of his own but relied on cross-examination of the two defendant doctors, a Dr. Quiroz, defendant hospital pathologist, and a Dr. Mulero, who originally had been named as a defendant, but who, prior to trial, had been dismissed as a defendant. All four doctors testified death resulted from TTP, a disease which they characterize as microscopic blood clots which consume the normal blood platelets and characteristically occur suddenly, uniformly resulting in death within days or hours.

Plaintiff's basic claim of error is directed at the trial court's grant of the directed verdict at the conclusion of plaintiff's proofs. We find no error. It is axiomatic that in order for plaintiff to prevail, plaintiff must show that the doctors' negligence a) caused TTP or b) contributed in some way to decedent's death. As to a), nothing appears in the record to contradict the pathologist's report. As to b) counsel with dogged determination sought to establish through extensive cross-examination that other factors than TTP played a part in decedent's

death.[1] However, nothing appears in the record to support counsel's arguments. None of the experts testified they saw signs of blood transfusion reaction. None testified as to evidence of drug reaction. None testified that elective surgery should not have been performed. None testified in support of counsel's other theories. Without some record-supported evidence plaintiff's theories become mere conjecture. Where a theory of causation becomes conjecture only then a directed verdict is proper. *Meli v General Motors Corp,* 37 Mich App 514; 195 NW2d 85 (1972).

Contrary to plaintiff's contention the record does not support a finding of negligence. Plaintiff's main argument is that Dr. Friedman was negligent in operating when his patient's blood tests showed low hemoglobin, hematocrit and platelet levels. The record is to the contrary. Blood tests conducted the day before the operation showed hemoglobin 11.6, hematocrit 34 and a normal platelet count. Dr. Friedman classified the patient as a good surgical risk under these conditions. None of the other experts testified to the contrary. Neither do we agree with plaintiff that a directed verdict was error because the record showed some evidence of a transfusion reaction. Dr. Quiroz found no evidence of such reaction post mortem and Dr. Krevsky and Dr. Friedman found none ante mortem. The only possibility of such reaction is that following surgery a Coombs test came back positive. While a Coombs test may indicate a

---

[1] Other factors suggested by defense counsel as a contributing cause of death are 1) the performance of elective surgery, 2) improper drugs, 3) blood transfusion reaction, 4) failure to determine the cause of the patient's anemia prior to surgery, 5) subfacta incompatibility, 6) delay in giving transfusions, 7) substitution of fresh blood for platelet concentration, 8) blood overload, 9) consideration of removal of patient's spleen. Factors 1 through 3 were set forth in plaintiff's complaint. Factors 4 through 9 are unpled theories.

transfusion reaction it may also indicate a number of other factors including TTP. Based upon these facts we conclude that the situation is controlled by *Kaminski v Grand Trunk Western R Co,* 347 Mich 417, 422; 79 NW2d 899 (1956), which quoted with approval a rule set forth in *City of Bessemer v Clowdus,* 261 Ala 388, 394; 74 So 2d 259 (1954):

" * * * There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

Plaintiff's remaining claims of error are in the main directed to alleged abuses of discretion by the trial judge, particularly to limitations on the scope of examination permitted plaintiff's counsel. Most of the disputed rulings disallowed further questions by plaintiff relating to theories of death which were not pleaded. In a malpractice case, the pleadings are required to be specific, dictating the exact theories of negligence to be shown. *Simonelli v Cassidy,* 336 Mich 635, 644; 59 NW2d 28 (1953). Accordingly we find no error. The trial court did not prevent counsel from pursuing the implications of the Coombs test but instead ruled that test results not ordered by the witness then testifying and made when the witness was not treating the patient should be interpreted by the doctor who dealt with the problem. Limitations made by the trial court on the scope of examination of theories pleaded were less frequent and are sustained under the rule that the trial court has authority to

control the order and admission of evidence. *Co-burn v Goldberg,* 326 Mich 280; 40 NW2d 150 (1949). We also conclude that the trial judge did not abuse his discretion in disallowing cross-examination of Dr. Mulero (MCLA 600.2161; MSA 27A.2161 does not apply to a witness who is not a party at the time of trial; further, the trial court did not refuse to declare the witness hostile but stated it would wait until the witness took the stand; counsel did not renew his request); did not abuse his discretion in refusing to permit plaintiff to question the authenticity of medical records introduced by plaintiff, *Hulbert v Hammond,* 41 Mich 343; 1 NW 1040 (1879); and did not abuse his discretion in failing to consider testimony that Dr. Friedman violated his own standards of due care (the record discloses that Dr. Friedman did not so testify).

Twenty examples are cited of hypothetical questions proposed by plaintiff to which the trial court sustained objections allegedly because not all the facts of the case were included in the question. Counsel asserts that all facts in a case need not be included in the proposed hypothetical. Counsel states the rule correctly *(Campbell v Charles J Rogers Construction Co,* 58 Mich App 411; 228 NW2d 398 [1975]), but oversimplifies the grounds upon which the proposed question was denied. There are many grounds upon which a hypothetical question may be rejected and our review of the testimony shows that, by and large, they were properly used by the trial court.[2] Furthermore, the

---

[2] On the grounds that the question is irrelevant (example 1, 2, 14); or assumes facts which are contrary to the record (example 3, 4, 5); or assumes facts which are not in the record and the assumption of which would be misleading (examples 9, 10, 18); or question asked later and answer given (example 11, 12, 15, 16, 17, 20); or where trial court indicated question would be allowed if another witness would testify (example 13); or where question had been answered before (example 19).

facts assumed must be somehow based upon the evidence. *Durbin v K-K-M Corp,* 54 Mich App 38, 54; 220 NW2d 110 (1974), *Bosch v Damm,* 296 Mich 522, 529; 296 NW 669 (1941). Given these principles we find no error of consequence in the rulings of the trial court.

Finally, did the court err in sustaining objections to interrogatories propounded by plaintiff regarding a death conference discussing the causes of death of Leona Serafin? Some time prior to trial the court sustained objections to the interrogatories on the ground that the information requested was confidential and barred by reason of MCLA 331.422; MSA 14.1179(12). On appeal we are asked to declare the statute unconstitutional. It is not necessary to reach the constitutional issue. The questions propounded in the interrogatories did not ask for the notes or records themselves but only inquired whether, when and where such a conference was held and who took the notes and under whose custody the notes were held. The statute does not bar a response to the questions asked but does bar the subpoena of the notes or records. At trial, Dr. Mulero responded to all the questions previously set forth in the interrogatories including the fact that he personally dictated the minutes of the conference and that the minutes were kept by the hospital medical record department. In light of the above facts we find no prejudice to plaintiff in the ruling of the court.

Affirmed. Costs to defendants.