STANEK v BERGEON

Docket No. 77-3641. Submitted November 9, 1978, at Lansing.—Decided February 22, 1979.

William J. Stanek sustained a fracture of his arm and was treated by Milton C. Bergeon, M.D., at Mason General Hospital. Stanek allegedly has lost the use of the arm, and he brought an action against Dr. Bergeon for damages for medical malpractice, and against Mason General Hospital on a theory of agency. The Ingham Circuit Court, Jack W. Warren, J., entered a judgment on the jury verdict of no cause of action. Plaintiff appeals, alleging several errors. *Held:*

1. The trial court's refusal to read back to the jury the testimony of an X-ray technician was not a clear abuse of discretion, because the testimony was not admissible to establish the standard of care to which Dr. Bergeon was bound, and there was no expert medical testimony that failure to take immediate post-casting X-rays was not in accord with customary practice. Such expert testimony was a prerequisite to a recovery for malpractice.

2. Medical textbooks are admissible in a malpractice case for impeachment purposes only.

3. A medical doctor's opinion as to the quality of care the plaintiff received was properly admitted.

4. The trial court properly precluded the plaintiff from expanding his theory of malpractice beyond what he alleged in his complaint.

Affirmed.

T. M. BURNS, J., dissented. He would hold that the trial

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 700.
[2] 29 Am Jur 2d, Evidence § 764.
  76 Am Jur 2d, Trial § 1041. Right to Have reporter's notes read to jury. 50 ALR2d 176.
[3] 61 Am Jur 2d, Physicians and Surgeons § 202.
[4] 29 Am Jur 2d, Evidence §§ 834, 890.
[5] 61 Am Jur 2d, Pleading § 75.
[6] 75 Am Jur 2d, Trial § 668.
  76 Am Jur 2d, Trial § 1041.

court's instruction to the jury, given in explanation of why the X-ray technician's testimony would not be read back to them when they requested it, was such that it undoubtably caused confusion in the minds of the jurors because it would lead the jury to believe that testimony which had been offered as fact testimony was expert opinion testimony. He would reverse.

Opinion of the Court

1. Appeal and Error — Pleading — Failure to Cite Authority.

Failure of an appellant to cite authority for his position on an issue is sufficient to preclude appellate review of that issue.

2. Trial — Evidence — Rereading Testimony — Discretion.

A trial court's refusal to reread certain testimony of an X-ray technician in a medical malpractice action was not a clear abuse of discretion where the testimony, regarding the technician's routine work, was not admissible to establish the standard of care of the defendant doctor.

3. Negligence — Malpractice — Medical Malpractice — Evidence — Expert Testimony.

Expert medical testimony regarding the customary practice of skilled doctors in the community practicing under similar conditions is an absolute prerequisite to a plaintiff's right to recover for alleged medical malpractice.

4. Negligence — Malpractice — Medical Malpractice — Evidence — Medical Texts — Impeachment.

Medical textbooks are admissible in a medical malpractice case for impeachment purposes only (MRE 707).

5. Pleading — Trial — Theory of Recovery — Court Rules.

A plaintiff may not expand his theories of recovery beyond what is alleged in his complaint (GCR 1963, 111.1).

Dissent by T. M. Burns, J.

6. Evidence — Instructions to Jury — Fact Testimony — Opinion Testimony.

*A trial court's instruction to a jury, in explanation of why it refused to read back the testimony of a witness, was erroneous in that it would unavoidably confuse the jury where the testimony of the witness had been offered as fact testimony while the court's instruction essentially characterized the testimony as expert opinion testimony.*

*Newman & Mackay,* for plaintiff.

*Fraser, Trebilcock, Davis & Foster* (by *Eugene F. Townsend, Jr.* and *Michael H. Perry*), for Milton C. Bergeon, M.D.

*Kitch & Suhrheinrich, P.C.* (by *Gregory Drutchas* and *Lawrence J. Acker*), for Mason General Hospital.

Before: D. F. WALSH, P.J., and T. M. BURNS and D. E. HOLBROOK, JR., JJ.

PER CURIAM. Plaintiff, William Stanek, filed a complaint against defendant Milton Bergeon seeking damages for medical malpractice. Plaintiff also sought damages from defendant Mason General Hospital on an agency theory. Plaintiff appeals the jury verdict of no cause of action as to each defendant.

On appeal plaintiff raises several issues. In his discussion of five of the nine issues raised plaintiff cites no authority. Such a practice has been held sufficient to preclude appellate review. *Kucken v Hygrade Food Products Corp,* 51 Mich App 471; 215 NW2d 772 (1974).

We find no clear abuse of discretion in the trial court's refusal to reread certain testimony of X-ray technician John Twichell. *Klein v Wagenheim,* 379 Mich 558; 153 NW2d 663 (1967). Although Mr. Twichell's testimony as to what he himself routinely did was perhaps admissible because it was based on his own personal knowledge and observations, it was not admissible to establish the standard of care to which Dr. Bergeon was bound. Plaintiff presented no expert medical testimony that the failure to take immediate post-casting X-rays was not in accord with customary practice of

skilled doctors in the community practicing under similar conditions. Such expert medical testimony was an absolute prerequisite to plaintiff's right to recover for alleged malpractice. *Lince v Monson,* 363 Mich 135; 108 NW2d 845 (1961), *Siirila v Barrios,* 398 Mich 576; 248 NW2d 171 (1976) (COLEMAN, J., concurring, 398 Mich 602; WILLIAMS, J., concurring, 398 Mich 611-612), *Bivens v Detroit Osteopathic Hospital,* 77 Mich App 478, 488; 258 NW2d 527 (1977). None of the recognized exceptions to this rule is applicable to the instant facts. *Lince v Monson, supra,* at 141-142, *Haase v DePree,* 3 Mich App 337, 346; 142 NW2d 486 (1966).

Nor do we find error in the trial court's refusal to admit as substantive evidence a medical textbook offered by plaintiff. Such texts are admissible for impeachment purposes only. MRE 707; *Bivens v Detroit Osteopathic Hospital, supra.*

The trial court properly permitted Dr. Kent Wu to give his opinion as to the quality of care received by plaintiff. *Groth v DeGrandchamp,* 71 Mich App 439, 443; 248 NW2d 576 (1976), *lv den* 400 Mich 808 (1977). The burden of attacking the foundation for such opinions rested on plaintiff in cross-examination. *Campbell v Charles J Rogers Construction Co,* 58 Mich App 411, 416; 228 NW2d 398 (1975).

The court properly precluded plaintiff from expanding his theory of malpractice beyond what he had alleged in his complaint. *Serafin v Peoples Community Hospital Authority,* 67 Mich App 560, 565; 242 NW2d 438 (1976), *lv den* 397 Mich 880 (1976), *Simonelli v Cassidy,* 336 Mich 635, 644; 59 NW2d 28 (1953), GCR 1963, 111.1.

We have reviewed the remaining issues raised on appeal and find them to be without merit.

Affirmed. Costs to appellees.

T. M. BURNS, J. *(dissenting)*. I cannot fully agree with the majority's treatment of the issue regarding the jury's request to have the testimony of X-ray technician Twichell repeated. The majority states:

"Although Mr. Twichell's testimony as to what he himself routinely did was perhaps admissible because it was based on his own personal knowledge and observations, it was not admissible to establish the standard of care to which Dr. Bergeon was bound."

As I view the problem, the majority has not dealt with the real question presented.

Twichell testified without objection:

"Q. Do you ever remember taking an X-ray of Mr. Stanek's arm after the cast was applied and before February 12th, 1973?

"A. Yes, I did.

"Q. Do you know where that is?

"A. What?

"Q. Is that X-ray here?

"A. I don't know. I—I don't know. I saw one with a cast on the 12th.

"Q. No, I mean did you ever take an X-ray of Mr. Stanek's arm after the cast was applied on 2-10-73?

"A. Oh, oh, okay.

"Q. And before February 12th, 1973?

"A. Oh. Routinely, but I really—routinely this is done, but I don't remember on his case at all. Routinely this is done. I don't remember there for sure."

After the jury had begun its deliberation, it requested that certain testimony be reread, including what Twichell had said regarding the normal procedure of taking post-casting X-rays. Plaintiff's counsel opposed rereading any testimony. I would agree that had the trial court merely refused to

have the testimony reread, there would have been no error; indeed, that was plaintiff's position. But, the court went further and instructed the jury:

"I instruct you that Mr. Twichell was not qualified as an expert to render an opinion as to what is normal procedure in relation to taking post-casting X-rays. And, so, I will not comply with your request because he is an X-ray technician, he is not one who a foundation was laid that would demonstrate that he has the qualifications of an expert to say what the, quote, 'normal procedure', unquote is in relation to post-casting X-rays. We don't know how many broken arm cases he took pictures of. We don't know what his total experience is, you see. What may be a procedure in an area that he worked in in one hospital may or may not be a procedure in another, I don't know. But, I tell you that the Court will not comply with your request because this witness was not qualified to render that opinion and you would have no right to rely upon his opinion as to what is, quote, 'normal procedure of taking post-casting X-rays', unquote."

This instruction was erroneous, not in what it said, but in the confusion it would unavoidably cause in the jurors' minds.

Twichell was not an expert. But, the testimony he gave required no expertise. He was only relating what he routinely did. He was certainly competent to testify to these facts. He was never asked and he never indicated an opinion that failure to order post-casting X-rays violated the physician's standard of care. The question to which this testimony was relevant was whether X-rays were taken, not whether the failure to take them was malpractice.

Somehow, what had been offered as fact testimony became opinion testimony in the minds of the defendants and the trial court. By striking the

testimony, at the state of proceedings at which it did, the trial court undoubtedly caused some confusion among the jurors on specifically this point.

I would reverse and remand for a new trial.