BELOBRADICH v SARNSETHSIRI

Docket No. 64573. Submitted October 17, 1983, at Detroit.—Decided December 20, 1983.

James and Margaret Belobradich brought a medical malpractice action against Phairatch Sarnsethsiri, M.D., and several others alleging that the failure of the attending physicians to properly treat plaintiff James Belobradich's injured leg resulted in amputation of the lower portion of the leg. The Wayne Circuit Court, Susan D. Borman, J., entered a judgment on a jury verdict in favor of plaintiffs against defendant Sarnsethsiri, who then appealed. Defendant alleges that plaintiffs should have been required to arbitrate their claims against him, that the trial court erred in allowing plaintiffs to introduce expert testimony in support of unpled claims of malpractice, and that plaintiffs' counsel should not have been allowed to question defendant regarding his failure to pass board certification examinations. *Held:*

1. The arbitration agreement with the hospital signed by James Belobradich bound the plaintiffs to arbitrate with those independent staff doctors who had agreed to arbitrate. At the time in question, defendant Sarnsethsiri had not yet signed an agreement to arbitrate. Therefore, plaintiffs were not required to arbitrate their claims against Sarnsethsiri.

2. The trial court did not err in holding that the claims of malpractice raised in the testimony of plaintiffs' expert witness had been adequately covered by the allegations in plaintiffs' complaint. To the extent that the subject of the witness's statements had not been pled the issues involved had been thoroughly covered in previous deposition testimony of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arbitration and Award § 24.
   61 Am Jur 2d, Physicians and Surgeons § 376.
   Arbitration of medical malpractice claims. 84 ALR3d 375.
[2] 61A Am Jur 2d, Pleading § 73.
[3] 61A Am Jur 2d, Pleading § 329.
[4] 23 Am Jur 2d, Depositions and Discovery § 1.
[5] 61 Am Jur 2d, Physicians and Surgeons § 345 *et seq.*
   81 Am Jur 2d, Witnesses § 28.

witness. Thus, defendant was not surprised or prejudiced by admission of the testimony at trial. Furthermore, issues not pled which are tried by express or implied consent of the parties are to be treated as if they had been raised in the pleadings.

3. Plaintiffs properly called the defendant as an adverse witness and, in response to a nonresponsive answer by defendant, plaintiffs' counsel questioned him regarding his unsuccessful attempts to become board certified. Under the circumstances of this case, such questioning was not error requiring reversal.

Affirmed.

1. ARBITRATION — PHYSICIANS AND SURGEONS — AGREEMENT TO ARBITRATE.

An injured plaintiff who signed an arbitration agreement at the time of injury which covers the hospital, its employees and those independent staff doctors "who have agreed to arbitrate" is not required to arbitrate a claim against a staff doctor who had, at the time, not yet signed an agreement to arbitrate in connection with his services performed at the hospital.

2. PLEADING — COMPLAINT — SPECIFICITY OF PLEADINGS.

A complaint must contain such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend; any requirement of specificity is to provide the defendant with sufficient notice to prepare a defense to the charges (GCR 1963, 111.1[1]).

3. PLEADING — ISSUES NOT PLED — AMENDMENT OF PLEADINGS.

Issues not raised in the pleadings which are tried by express or implied consent of the parties are to be treated as if they had been raised in the pleadings and, generally, the pleadings in such a case may be amended to conform to the evidence (GCR 1963, 118.3).

4. TRIAL — WITNESSES — TESTIMONY — SURPRISE.

A party may not claim that he was prejudiced through surprise by admission at trial of testimony regarding issues which were raised and extensively explored during a deposition of the witness.

5. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — WITNESSES — ADVERSE WITNESSES.

A defendant physician in a medical malpractice case may be called by the plaintiff as an adverse witness, and may even be

employed to supply expert testimony to establish the plaintiff's case.

*Goldstein, Meklir, Schreier, Nolish & Friedman, P.C.* (by *Sherwin Schreier*), for plaintiffs.

*Moll, Desenberg, Bayer & Behrendt* (by *Jon P. Desenberg* and *John M. Toth*), for defendant.

Before: V. J. BRENNAN, P.J., and CYNAR and C. W. SIMON, JR.,* JJ.

PER CURIAM. Defendant Phairatch Sarnsethsiri, M.D., appeals as of right from a jury verdict in favor of plaintiffs in this medical malpractice case.

Plaintiff James Belobradich was injured in a motorcycle accident on July 2, 1976. He was taken to the emergency room at Holy Cross Hospital with multiple fractures of the left leg and other injuries. The hospital assigned defendant, an orthopedic surgeon, to treat plaintiff. However, due to progressive circulatory problems and infection in plaintiff's left leg, the leg was amputated below the knee on August 20, 1976.

Plaintiffs subsequently filed a complaint alleging that the amputation resulted from failure of attending physicians, including defendant, to recognize and treat the impaired circulation in James Belobradich's left leg. Following trial, judgment was entered against defendant and in favor of James Belobradich for $700,000 and in favor of Margaret Belobradich for $50,000.

Defendant raises three issues on appeal. Initially defendant maintains that, as an "on-call" specialist assigned to plaintiff's case by the hospital, defendant fell within the ambit of an agreement to arbitrate signed by plaintiff on July 7, 1976. In

* Circuit judge, sitting on the Court of Appeals by assignment.

*Kukowski v Piskin,* 99 Mich App 1; 297 NW2d 612 (1980), *aff'd by an equally divided Court* 415 Mich 31; 327 NW2d 832 (1982), a panel of this Court held that a patient who executes such an agreement agrees to arbitrate claims involving parties other than the hospital, including independent staff doctors who had executed an agreement to arbitrate. See, also, *McCloy v Dorfman,* 123 Mich App 710, 714-715; 333 NW2d 338 (1983). In this case, although defendant did sign an agreement to arbitrate, he did not do so until several months after plaintiff had been treated and had executed his arbitration agreement.

The result sought by defendant would run contrary to the explicit language of the arbitration agreement signed by plaintiff. The agreement provided that it would be binding upon "this hospital, its employees and those of its independent staff doctors and consultants *who have agreed to arbitrate".* (Emphasis supplied.) Under nearly identical facts, this Court in *Brown v Considine,* 108 Mich App 504; 310 NW2d 441 (1981), ruled that the patient's agreement did not cover his claim against the defendant doctor, because at the time of its execution the defendant had not agreed to the arbitration of claims against him.

Ignoring *Brown,* defendant argues that he should be covered by the agreement because plaintiff looked to the hospital for treatment and perceived defendant solely as an agent of the hospital. Defendant relies on *Grewe v Mt Clemens General Hospital,* 404 Mich 240; 273 NW2d 429 (1978), wherein the Supreme Court held that under the doctrine of agency by estoppel a hospital may be held liable for the acts of medical personnel who were its ostensible agents. See, also, *Howard v Park,* 37 Mich App 496; 195 NW2d 39 (1972), *lv*

*den* 387 Mich 782 (1972), citing 1 Callaghan's Michigan Civil Jurisprudence, Agency, § 27, pp 171-173. While this is fine authority, we are at a loss to comprehend how it supports defendant's position. The fact that, in a proper case, a hospital may be estopped to deny an agency relationship through the equitable device of ostensible agency does not compel the conclusion that an independent medical contractor, arguably held out as the hospital's agent, becomes implicitly bound to an arbitration agreement executed between the hospital and a patient. We follow *Brown* and rule that plaintiff was not bound to arbitrate his claim against defendant.

Defendant next maintains that the trial court erred in permitting plaintiffs, through the testimony of their expert Dr. Byron A. Genner, III, to introduce testimony in support of unpleaded claims of malpractice.

Plaintiffs' expert witness testified that defendant violated the standard of orthopedic care by closing the fascia[1] without allowing for drainage of the leg, and by using an inadequate capillary/pinch test for circulation. Defendant objected to this testimony on the grounds that these claims of malpractice had not been specifically alleged in the complaint. The witness further testified that a vascular surgeon should have been consulted post-operatively and that a rod instead of plates and screws should have been used to immobilize the fracture. Defendant did not object to this testimony.

At trial, the court ruled that the closing of the fascia without drainage was covered by paragraph 14, subparagraphs (d) through (g) of the complaint:

---

[1] Fascia: tough connective tissue that separates muscle compartments and muscle from subcutaneous tissue and bone.

"[D]efendant doctors did breach said standard of care owed in the following, but not limited to, manner:

\* \* \*

"d) failed to sterilize adequately the affected area to and to use adequate medical precautions to prevent development of infection in the injured area;

"e) failed to split or remove the cast when it became apparent that the tightness of the cast had cut off circulation in plaintiff's lower leg and that infection had set in;

"f) permitted the development of infection, gangrene and rotting of skin and flesh under the cast with no adequate steps to prevent and/or to heal said condition;

"g) failed to adequately follow plaintiff's progress in orthopedic aftercare so as to ascertain development of infection and to take steps to prevent or heal said infection."

The court further determined that paragraph 4, subparagraph (o) covered the capillary/pinch test testimony. That portion of the complaint alleged that defendant physicians "failed, after initial examination, to heed obvious signs and indications of a lack of blood supply in the affected area; further failed to explore into and/or determine the cause or causes of said lack of blood supply in the affected area; failed at that time to consult with a vascular surgeon to determine the cause of the obvious circulatory problems."

Plaintiffs were obviously not entitled to litigate issues or claims not raised in the pleadings. *Dolan v O M Scott & Sons,* 23 Mich App 13; 178 NW2d 108 (1970). GCR 1963, 111.1(1) requires that the complaint contain "such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend". This Court, relying on *Simonelli v Cassidy,* 336 Mich 635; 59 NW2d 28 (1953), has held that an elevated degree of specificity is required in

medical malpractice cases, the complaint dictating the exact theories of negligence to be shown. *O'Toole v Fortino,* 97 Mich App 797; 295 NW2d 867 (1980), *lv den* 410 Mich 863 (1980); *Serafin v Peoples Community Hospital Authority,* 67 Mich App 560, 565; 242 NW2d 438 (1976), *lv den* 397 Mich 880 (1976); *Haase v DePree,* 3 Mich App 337, 341; 142 NW2d 486 (1966). One panel of this Court, however, has suggested in dicta that the *Simonelli* Court did not intend a departure from general pleading rules in malpractice cases. *Hill v Freeman,* 117 Mich App 788, 791-792; 324 NW2d 504 (1982), *lv den* 417 Mich 1004 (1983). Any endeavor on our part to solve the *Simonelli* riddle would be an academic exercise because we would achieve the same result under either standard.

The purpose of any requirement of specificity in pleadings is to provide a defendant with sufficient notice to prepare a defense to the charges. *Welniak v Alcantara,* 100 Mich App 714, 716; 300 NW2d 323 (1980). With regard to three of the allegedly novel negligence theories, we believe that sufficiently distinct averments were made in the complaint to notify defendant of these issues. In our opinion, the trial court was correct in determining that the claims of malpractice in closing the fascia without drainage and in using the capillary/pinch test were adequately alleged. The former claim is covered by subparagraphs 14(d) through (f), *supra,* concerning failure to take precautions to prevent tissue infection and decay. The capillary/pinch test evidence related to the allegations of subsection 14(o), *supra,* as well as subsection 14(p), which stated:

"p) subsequent to the initial surgery, failed to timely perform or have performed, diagnositc testing to indi-

cate whether or not the affected area was receiving an adequate supply of blood."

We further find that subparagraph 14(p) above embraces proofs concerning defendant's post-operative failure to consult a vascular surgeon. This leaves the question of Dr. Genner's opinion testimony that defendant should have employed an intermedulary rod, or some alternate device, instead of plates and screws to immobilize the fracture.

We find no error in admission of this testimony, not objected to at trial, because it could have been the subject of an amendment under GCR 1963, 118.3. This rule provides:

".3 Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case an amendment of the pleadings to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, amendment to conform to such proof shall not. be allowed unless the party desiring amendment satisfies the court that the amendment and the admission of such evidence would not prejudice the objecting party in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Defendant deposed Dr. Genner prior to trial and this issue, indeed all issues now complained of save the capillary/pinch test issue, came to light and were extensively explored during that deposition. Defendant hence may not claim that he was prejudiced through surprise by admission of that

testimony. *Berwald v Kasal,* 102 Mich App 269; 301 NW2d 499 (1980). We conclude that admission of Dr. Genner's testimony did not constitute reversible error.

Finally, defendant maintains that plaintiffs' counsel should not have been permitted to question him regarding his failure to pass certification examinations administered by the American Board of Orthopedic Surgeons. Defendant made a motion *in limine* to prevent such reference. The court agreed that the evidence would not be relevant to the question of negligence, but that it would be allowed should defendant render expert testimony.

Plaintiffs called defendant as an adverse witness. While being questioned concerning his failure to consult a vascular surgeon, defendant gratuitously offered that as a trained orthopedic surgeon, he had become knowledgeable about circulatory problems as well. Plaintiffs' counsel then questioned defendant about his three unsuccessful attempts to become board certified in his medical specialty. Defendant did not object to this questioning.[2]

A defendant physician may be called as an adverse witness, and may even be employed to supply expert testimony to establish a plaintiff's case. *Rice v Jaskolski,* 412 Mich 206; 313 NW2d 893 (1981). While it may be questionable practice to call a defendant as an expert and then impugn his credentials by eliciting information that could be prejudicial, we decline to find reversible error under the circumstances of this case. Initially, our review of the extensive examination of this wit-

---

[2] Plaintiffs' counsel had earlier elicited testimony from defendant concerning his initial failure to pass the state licensing examination for physicians. Defendant passed on his second effort. This material was not the subject of a limiting motion or objection below, hence defendant may not now claim error in this questioning.

ness convinces us that plaintiffs' counsel did not call defendant merely to discredit him. Moreover, counsel's treatment of the subject was very brief and undertaken only after defendant had rendered nonresponsive testimony that he knew about circulatory problems as an adjunct to his training and education in orthopedics. Thirdly, defendant was, at the time of the motion *in limine,* offered a limiting instruction contingent upon this evidence being received. Finally, defendant has not convinced us that the trial court's ruling on the motion *in limine* was erroneous. See generally *Phardel v State of Michigan,* 120 Mich App 806; 328 NW2d 108 (1982), *lv den* 417 Mich 1015 (1983).

Affirmed.