VILLAGE OF MANCHESTER *v.* BLAESS.

1. EASEMENTS—ELEMENTS NECESSARY TO ESTABLISH.
    To establish easement by prescription there must be continued and uninterrupted use or enjoyment, identity of thing enjoyed, and claim of right adverse to owner of soil known to and acquiesced in by him.

2. SAME—HIGHWAYS AND STREETS—LAND MUST BE DEFINITELY LOCATED.
    To establish easement for street purposes, land so used must be definitely located; it being insufficient to show generally that public passed over entire strip.

3. SAME—PARKING PURPOSES—ADVERSE USER.
    That strip of land owned by owners of mill and used in connection therewith was also used by public to park automobiles at night when mill was not in operation does not establish easement in municipality for parking purposes; use therefor not being continuous and uninterrupted, and not being adverse to owner's use, but rather in recognition thereof.

Appeal from Washtenaw; Sample (George W.), J. Submitted April 8, 1932. (Docket No. 62, Calendar No. 36,401.) Decided June 6, 1932.

Bill by Village of Manchester, a municipal corporation, against William J. Blaess and another to enjoin obstruction of an alleged easement. Bill dismissed. Plaintiff appeals. Affirmed.

*L. L. Watkins,* for plaintiff.

*Frank B. Devine,* for defendants.

McDONALD, J. This suit was brought to restrain the defendants from constructing a gasoline station on a portion of their property in which the plaintiff

─────────────────────────

As to prescriptive right of way, see annotation in 5 L. R. A. (N. S.) 854.

claims to have acquired an easement by prescription for street purposes. From a decree dismissing the bill the plaintiff has appealed.

The defendants own the fee of land located at the intersection of Exchange Place street and Railroad street in the village of Manchester. For the purpose of this suit it is clear enough to describe it as bounded on the north by Exchange Place street, on the west by Railroad street, on the east by the Raisin river, and on the south by land formerly owned by Amariah Conklin. There is a flour and feed mill on the property which has been owned and operated by the defendants and their predecessors in title for 50 years. It is built in the northwest corner of the property, and stands a sufficient distance from Railroad street to afford a loading and unloading place for customers. This strip of land between the mill and Railroad street and between the river embankment and Railroad street south to the Conklin property is the land in which plaintiff claims to have acquired an easement by prescription for street purposes. In its bill of complaint the plaintiff alleges:

"That the public has used the strip of land bounded on the north by the southerly line of said Exchange Place street; on the east by the westerly foundation wall of the said feed mill and the crest of the westerly bank of the said River Raisin; on the south by the northerly line of the land formerly owned by the said Amariah Conklin; and on the west by the easterly line of said Railroad street for the purpose of public travel for the past 40 years, and upwards, and that the plaintiff, by its officers and servants, has worked and maintained said strip of land as a part and parcel of the said Railroad street for and during the said period of 40 years, and upwards, and all without let or hindrance from any person or persons whomsoever, until on or about the

15th day of June, 1931, when the defendants started to make an excavation on the easterly side of said strip of land.''

The defendants answered with a cross-bill denying that plaintiff had acquired an easement in the land and praying for a decree quieting their title.

The essential elements of an easement by prescription are stated by Ruling Case Law and Corpus Juris as follows:

''To establish an easement by prescription there must be: first, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; third, a claim of right adverse to the owner of the soil, known to and acquiesced in by him.'' 9 R. C. L. § 33, p. 772.

''The use and enjoyment which will give title by prescription to an easement or other incorporeal right is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. That is to say, it must be adverse, under claim of right, continuous, uninterrupted, open, peaceable, exclusive and with the knowledge and acquiescence of the owner of the servient tenement.'' 19 C. J. § 32, p. 878.

The principal obstacle in the way of establishing the plaintiff's right to a highway by user over this land is that the testimony does not show the use of any particular or definite portion by the public. It shows no definite lines or tracks by which the easement may be identified. An easement is claimed, not over any particular way, but over the entire strip up to the foundation wall of the mill and under the nine-foot canopy that extends over the doors where customers unloaded grain. This strip of land west of the mill is 32 feet wide at the north and narrows to 22 feet at the southwest corner of the mill. It im-

mediately adjoins Railroad street on the east and Exchange Place street on the south. Its use for travel by the public was not necessary or beneficial. It was not even convenient, except that it enabled drivers to cut the corner in going from Railroad street on to Exchange Place street. There was no curb or other mark to designate the boundary line between this strip of land and Railroad street, and the public did not know when they were driving on defendants' land except possibly when they were cutting the corner onto the intersecting street. A witness for the plaintiff testified:

"The public drove all over; whether they were customers of the mill or not, I don't think made any difference. It was open; everybody drove there whenever they felt like it."

Other witnesses testified that the public drove all over the defendants' land, that in making the corner onto Exchange Place street they usually took a route closer to the mill and that some even drove under the canopy. A highway cannot be established over a man's property by that kind of user. He has a right to know where it begins and where it ends. It is an incumbrance and a burden on his land and must be definitely located.

"A prescriptive right of way, for example, cannot be acquired to pass over a tract of land generally; such right must be confined to a specific way, or a definite, certain and precise line, which has been used as the right of way."  9 R. C. L. § 35, pp. 775, 776.

As there was no regular driveway established over the defendants' land, the plaintiff has not acquired an easement therein for highway purposes.

But the plaintiff also claims to have acquired the right to use the land for parking purposes. The manner in which it was used for this purpose was described by the plaintiff's witness, Samuel Voegeding, who had been familiar with the property for 30 years. He testified:

"During the daytime and the mill was in operation there were teams there all the time, loading and unloading. At night when the mill would close up, people would come there and hitch their horses if they wanted to. And since the advent of the automobile, that practice has been carried on. During the daytime the mill owners have used the property for mill purposes and at night the public would come in and park when the mill wasn't in operation."

There is nothing in this testimony showing a public use of the property inconsistent with defendants' ownership. It was a use exercised in recognition of the owners' right to use it, not for the same purpose but for other and private purposes. It was not a continuous and uninterrupted use. The public was deprived of its use for parking purposes when the defendants were operating their mill. It was not an adverse use, because it did not interfere with the use the owners made of it in their business.

It is not necessary to pursue the argument further. Other claims might be discussed, but we have said enough to demonstrate that some of the essential elements necessary to constitute a right of way by prescription were wanting. The trial court correctly disposed of the issue.

The decree is affirmed, with costs to the defendants.

Clark, C. J., and Potter, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.