O'TOOLE v FORTINO

Docket No. 44422. Submitted February 13, 1980, at Lansing.—Decided
     June 3, 1980.

Martin O'Toole, for himself and as administrator of the estate of
     Genevieve O'Toole, deceased, brought an action for damages for
     medical malpractice against Silvio P. Fortino, M.D., William P.
     Drescher, M.D., Daniel E. Williams, M.D., and Harry J.
     Schmidt, M.D. Genevieve O'Toole suffered from breast cancer,
     and defendants Fortino, Williams and Schmidt treated her at
     different times prior to her death. Defendant Drescher was
     assistant medical examiner at the time Mrs. O'Toole died. He
     determined that the cause of death was pneumonia, and that
     the cancer was a contributing factor. The Ingham Circuit
     Court, Jack W. Warren, J., granted summary judgment to
     defendant Drescher on the basis of governmental immunity,
     and to the other defendants on the basis that the plaintiff had
     failed to state a cause of action for which relief could be
     granted. Plaintiff appeals. *Held:*

     1. Plaintiff's complaint complied with the notice requirement
     for pleadings by reasonably informing the defendants of the
     nature of the claim they were called upon to defend.

     2. The complaint also sufficiently alleged the duties owed by
     the defendants, the breach of those duties, the causal relation-
     ship between the breach and the injuries complained of, and
     the elements of damages.

     3. The acts of the medical examiner were discretionary and
     are therefore protected by governmental immunity.

     Reversed as to defendants Fortino, Williams and Schmidt.
     Affirmed as to defendant Drescher.

     M. J. KELLY, J., dissented. He would find that plaintiff has
     failed to plead any specifics regarding the accepted method of

REFERENCES FOR POINTS IN HEADNOTES
[1] 61 Am Jur 2d, Pleading § 23.
[2] 61 Am Jur 2d, Pleading §§ 229-231, 233.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 186.
[4, 6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 186.
[5] 63 Am Jur 2d, Public Officers and Employees §§ 273, 289.

treatment of breast cancer patients, failed to specify what the defendants negligently did or did not do during the course of treatment, failed to demonstrate the causal relationship between the decedent's death and the defendants' actions, and failed to illustrate how any of the defendants' conduct was contrary to generally accepted standards of care in each area of practice represented by the various defendants. He would affirm the grant of summary judgments as to all of the defendants.

## Opinion of the Court

1. Pleading — Notice — Claim Upon Which Relief Can Be Granted — Court Rules.

A pleading must give notice of the nature of the claim sufficient to permit the preparation of a meaningful response and must state a claim upon which relief can be granted (GCR 1963, 111.1, 117.2[1]).

2. Judgment — Summary Judgment — Failure to State Claim.

A trial court's grant of a summary judgment for failure to state a claim upon which relief can be granted is tested by examination of the pleadings alone; the factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged, and, unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion for summary judgment should be denied.

3. Negligence — Medical Malpractice — Pleading — Necessary Allegations.

Every fact necessary to constitute a cause of action must be alleged with reasonable certainty and definiteness in a medical malpractice action; it is essential for a plaintiff to allege the duty of the physician to the person injured, the breach of the duty complained of, the causal relationship between the breach and the injuries complained of and the resulting damage.

4. Negligence — Medical Malpractice — Breach of Duty.

The element of breach of duty in a medical malpractice action is the failure of the defendant to conform to the applicable standard of conduct; the allegation of a failure to act when one is under a duty to do so is a sufficient allegation of a breach of duty.

5. TORTS — GOVERNMENTAL IMMUNITY — DISCRETIONARY ACTS —
   MINISTERIAL ACTS — STATUTES.

   Liability of a public official for tortious acts committed in the
   scope of his employment is determined by deciding whether the
   acts of the official are discretionary or ministerial; discretionary
   acts, those involving a latitude of choice, are normally pro-
   tected under governmental immunity, while ministerial acts,
   those where the official has little decision-making power during
   the course of performance, are not so protected (MCL 691.1407;
   MSA 3.996[107]).

DISSENT BY M. J. KELLY, J.

6. PLEADING — MEDICAL MALPRACTICE — NEGLIGENCE — BREACH OF
   DUTY — SUMMARY JUDGMENT.

   *A plaintiff's complaint for alleged medical malpractice was insuf-
   ficient where it failed to make specific allegations as to the
   existence or manner of breach of the defendants' duties; mere
   conclusions, without factual allegations to support them, cannot
   withstand a motion for summary judgment.*

*George Platsis,* for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *Webb A. Smith* and *John W. Cotner),* for defendant Fortino.

*Farhat, Burns & Story, P.C.* (by *Richard C. Kraus),* for defendant Williams.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Eugene F. Townsend, Jr.,* and *David E. S. Martin),* for defendant Schmidt.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *John L. Christensen),* for defendant Drescher.

Before: J. H. GILLIS, P.J., and ALLEN and M. J. KELLY, JJ.

J. H. GILLIS, P.J. This is a medical malpractice action. Plaintiff appeals from summary judgments granted in favor of the defendants on the ground

that plaintiff failed to state a claim upon which relief could be granted. GCR 1963, 117.2(1).

In August, 1974, Genevieve O'Toole, wife of Martin O'Toole, discovered a lump in her right breast. On September 6, 1974, Mrs. O'Toole consulted defendant Dr. Fortino for examination, evaluation and treatment of the lump. During the next year she saw Dr. Fortino three additional times. After the last visit, on August 11, 1975, Dr. Fortino referred Mrs. O'Toole to defendant Dr. Schmidt for a surgical biopsy.

The biopsy was performed by Dr. Schmidt on August 15, 1975. Pathological examination of the lump revealed it to be cancerous. A radical mastectomy of her right breast was performed by Dr. Schmidt on August 21, 1975.

The next day, at the request of Dr. Schmidt, defendant Dr. Williams, an oncologist, undertook the treatment of Mrs. O'Toole. Over the next 15 months, Dr. Williams prescribed chemotherapy and radiation therapy for Mrs. O'Toole. On November 29, 1976, Mrs. O'Toole consulted Dr. Williams concerning a lump on her right shoulder. On December 13, 1976, the lump was removed by Dr. Williams and found to be cancerous. A single chemotherapy treatment followed on December 17, 1976. On December 22, 1976, Genevieve O'Toole died.

On December 22, 1976, defendant Dr. Drescher was the assistant medical examiner for Ingham County. On that date, Dr. Drescher, based on Mrs. O'Toole's medical history and body condition, determined that an autopsy was not required. He further determined that the cause of her death was pneumonia and that "metastatic carcinoma of breast" was an "other significant condition" contributing to the death.

Plaintiff filed his original complaint on May 17, 1977. Plaintiff thereafter filed four amended complaints. Each of these complaints was found by the lower court to be deficient for their failure to comply with minimum pleading requirements. On March 14, 1979, the lower court granted summary judgments to the defendants pursuant to GCR 1963, 117.2(1). The judgment in favor of Dr. Drescher was granted on the basis of governmental immunity. The judgments in favor of the remaining defendants were granted on the basis that plaintiff had failed to comply with the pleading requirements of a medical malpractice action. Plaintiff appeals as of right from the entry of those judgments. GCR 1963, 806.1.

We address first the question of the propriety of the grants of summary judgment in favor of defendants, Drs. Fortino, Williams and Schmidt.

GCR 1963, 111.1 provides in part:

"A pleading which sets forth a claim for relief, whether a complaint, counterclaim, cross-claim or third-party claim, shall contain

"(1) a statement of the facts without repetition upon which the pleader relies in stating his cause of action with such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend."

The general requirement of stating the "facts" on which the pleader relies in stating his "cause of action" relates to separate requirements of a pleading. The primary requirement is that the pleading must give notice of the nature of the claim sufficient to permit the preparation of a meaningful response. This requirement is addressed to the technical sufficiency of the pleading as a matter of form.

The second requirement of a pleading is that it must state a set of facts that is sufficient to meet the substantive requirements for relief. That is, the pleading must state a "claim upon which relief can be granted". GCR 1963, 117.2(1). See, 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 194-198.

Our examination of plaintiff's fourth amended complaint discloses that it is sufficient to comply with the notice requirement of GCR 1963, 111.1. It reasonably informs the adverse parties of the nature of the claim they are called upon to defend. See *Hanselman v Carstens,* 60 Mich 187; 27 NW 18 (1886).

We next must consider whether the second requirement of a pleading was met. Did the fourth amended complaint state a claim as to these defendants upon which relief can be granted?

The standard governing this Court's review of a grant of summary judgment due to the failure to state a claim upon which relief can be granted, GCR 1963, 117.2(1), is well settled. The motion is to be tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under the subrule should be denied, *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972), *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978).

Medical malpractice must be pled more specifically than other types of negligence. *Simonelli v Cassidy,* 336 Mich 635, 644; 59 NW2d 28 (1953). See the comment on *Simonelli* in 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 197. General allegations of negligence are insufficient. In a medical malpractice action, every fact necessary to constitute a cause of action must be alleged with reasonable certainty and definiteness. Thus, it is essential to allege the duty of the physician to the person injured, the breach of the duty complained of, the causal relation between the breach of the duty and the injuries complained of and the resulting damage. *Simonelli,* at 644, quoting 70 CJS, Physicians & Surgeons, § 61, pp 986-987. Where the breach of duty relied on is negligence in the diagnosis and treatment of the patient, it is insufficient for a plaintiff to simply describe what a physician did or failed to do and then allege that the action or omission was negligent. The plaintiff must allege the proper or accepted method of diagnosis and treatment. *Simonelli, supra,* 643.

Plaintiff's fourth amended complaint (hereinafter referred to as complaint) must be measured against these standards to determine if it was sufficient to state a claim upon which relief can be granted.

Paragraphs 9, 10 and 11 of plaintiff's complaint state:

"9. That defendants at all times herein mentioned held themselves out as medical doctors having the required knowledge of the state of the then existing art and skill to perform the duties set forth herein.

"10. They represented that they possessed and exercised their own, prevailing and recognized standards of learning, skill, care and diligence of average medical

doctors similarly situated, and acceptable professional practices in Lansing and communities similar to Lansing.

"11. In addition, defendants Schmidt, Williams and Drescher represented that they possessed and exercised their own, prevailing and recognized standard of care within their respective specialities as surgeon, oncologist and medical examiner as reasonably available under the circumstances and as applied in light of the facilities available in Lansing and communities similar to Lansing, the standard of care of a reasonable specialist practicing medicine in light of present day scientific knowledge and under the laws of this state."

Paragraphs 80, 81 and 82 state:

"80. That in evaluating said lump and any underlying condition prior to August 11, 1974, defendant Fortino owed the following duties to Genevieve and plaintiff:

"a. To evaluate the likelihood said lump was cancerous and the urgency of resolving any doubts as to the cause of said lump by conducting a physical examination of both breasts and axillary areas of Genevieve O'Toole, ascertaining her medical and family history relative to cancer and related predisposing conditions.

"b. To chart the size and location of the lump on each and every such visit aforementioned and on a monthly basis.

"c. To conduct said examinations every mid-month *after* her menstrual periods and *after* having determined the size and location of any lumps and breast structures and irregularities immediately before several of her menstrual periods.

"d. To keep abreast of available medical literature, books and correspondence immediately available to him regarding the evaluation, care and treatment of and the resolution of doubts or conflicts as to the existence, size and importance of breast lumps in a 47 year old woman such as Genevieve, and women similarly situated.

"e. To consult with another physician with more experience than he possessed regarding the evaluation

of a woman who complained of a breast lump in September 1974, and thereafter on each subsequent visit aforementioned and to therefore resolve doubts or conflicts between her opinion and his judgment as to the existence and diagnosis of said lump and obtain such consultation report in writing.

"f. To order, arrange for and conduct mammography and/or zerography studies of the left and right breasts and to therefore resolve any said doubts and conflicts as to the diagnosis of said lump.

"g. To order, arrange for and conduct thermography studies of the left and right breasts and therefore resolve any said doubts and conflicts as to the diagnosis of said lump.

"h. To order, arrange for and conduct surgical biopsies and microscopic evaluation of said lump by a pathologist, and therefore resolve any said doubts and conflicts as to the diagnosis of said lump.

"i. To inform plaintiff of the availability of these procedures to resolve any said doubts and conflicts as to the diagnosis of said lump and receive written consent from Genevieve to forego these diagnostic tests.

"81. That on August 11, 1974, and thereafter, Defendant Fortino owed the following duties to the plaintiff and Genevieve:

"a. To continue overall care, treatment and supervision of Genevieve's treatments by other doctors and to assure coordination, cooperation and unity of purpose in therapies selected and the avoidance of detrimental and conflicting procedures.

"b. To select a surgeon, internist or both who would exercise the standards of care, evaluation and treatment consistent with duties set forth below for defendants Schmidt and Williams.

"c. To communicate an accurate, complete and thorough pertinent history and physical examination of Genevieve to defendants Schmidt, Williams and the radiologist who treated Genevieve, particularly that she first complained of a lump in her right breast on September 6, 1974, that she gave birth to two children relatively late in life and had a grandmother who died of breast carcinoma.

"d. To explain the medically significant alternatives to radical breast surgery as was performed by defendant Schmidt, coupled with subsequent radiation and drug therapies set forth herein, and receive written consent from Genevieve for the procedures performed upon her.

"e. To obtain the written consultation, advice and recommendations of Dr. Williams and the radiologist *before* surgery was begun by defendant Schmidt to operate for said breast lump on August 21, 1975.

"82. That on August 11, 1974, and at all times herein mentioned thereafter, defendants Fortino, Schmidt and Williams owed the following duties to Genevieve and plaintiff:

"a. To provide plaintiff with current, truthful, complete and accurate information about all her conditions, diseases, diagnoses and explain medically significant alternatives for therapy and non-therapy than was actually given in this case in terms that were reasonably clear and meaningful.

"b. To obtain from Genevieve her written informed consent as to the course of treatment actually afforded to her in this case.

"c. To consult with and advise each other and said radiologist in writing *before* surgical treatment was begun.

"d. To conduct periodic physical examinations of her left breast and her neck and shoulders for metastatic cancer and to chart their existence, size and location.

"e. To conduct tests and monitor physical changes that could indicate the effectiveness of surgery, chemotherapeutic agents and radiation therapy so as to achieve maximum impact, including but not limited to:

"1. Periodic monitoring and charting of actual tumor size wherever found.

"2. Periodic CEA testing.

"f. To establish, maintain and preserve the greatest possible capacity of Genevieve to withstand chemotherapy and radiation therapy so as to permit the largest possible and continuous dosages thereof and without such interruptions in therapy as occurred in November-December, 1975, and November-December, 1976, due to

the presence of surgical complications, including but
not limited to:

"1. Performance of a less extensive surgery than was
actually performed in August 1975 by defendant
Schmidt, such as a simple mastectomy with removal of
only the central and grossly involved lymph nodes.

"2. Treatment of the pneumonia which afflicted Gene-
vieve in November and December 1976.

"g. To place Genevieve in hospital in November and
December 1976 to ascertain the cause and character of
her pneumonia and whether the same was related or
unrelated to her cancer and treatable by performing at
least one or more of the following tests:

"1. Vertical and horizontal chest X-rays.

"2. Aspiration of contents of her left chest cavity for
microbiology and cytology tests.

"3. Antibiotic therapy.

"4. Chemotherapy.

"5. Radiation therapy.

"h. To record both positive and pertinent or medically
significant negative events, occurrences, observations of
and findings on Genevieve before undertaking, with-
holding, or both, surgical, radiological and chemothera-
pies.

"i. To plan, coordinate and implement a program that
would minimize the injuries Genevieve suffered as a
result of surgery, chemotherapy and radiation treat-
ments.

"j. To refrain from communicating with each other
until such time as one or more of their respective,
relevant prior duties as set forth herein were per-
formed.

"k. To keep abreast of available medical literature,
books and correspondence immediately available to
them regarding the treatment of a woman such as
Genevieve who complained of a lump for one year prior
to the surgery, which lump measured 2.5 cm, one (1)
inch, in diameter and who had an axillary lymph node
which measured 1.8 cm, 3/4 inch, in diameter, days
before surgical biopsy and radical mastectomy were
performed.

"1. To consult with a fourth physician familiar with

the examination, evaluation, care and treatment of
pneumonia.

"m. To continue every possible life sustaining treat-
ment until such time as all reasonable men would agree
that metastatic cancer had progressed to a point that
(1) it would be beyond further medical control *and* (2)
the immediate cause of death or one of the related
causes of death would be said metastatic cancer.

"n. To communicate all relevant knowledge about
Genevieve's medical history and physical condition to
defendant Drescher so to assist him in completing an
accurate, truthful and complete death certificate rela-
tive to the cause of death."

The duty which these defendants owed to Gene-
vieve O'Toole was the obligation to conform to a
certain standard of conduct. Prosser, Torts (4th
ed), § 30, p 143. The inference which may fairly be
drawn from paragraphs 9 to 11 is that the defen-
dants were obligated to act in accord with the
prevailing and recognized standards of learning,
skill, care and diligence of average medical doctors
similarly situated. These paragraphs sufficiently
alleged the general duty of these defendants.

Paragraphs 80 to 82 state the specific duties
assertedly owed by the defendants. The fair infer-
ence to be drawn from these allegations is that
these duties are congruent to the proper or ac-
cepted method of treatment. The conclusion to be
drawn is that the plaintiff, in the above-quoted
paragraphs, sufficiently alleged the duty element
of his cause of action.

The breach of duty element in a malpractice
action is defined as the failure of the defendant to
conform to the applicable standard of conduct.
Prosser, Torts (4th ed), § 30, p 143. Paragraph 84
of the complaint states:

"84. That each of the defendants herein wantonly,

intentionally, knowingly, negligently and/or recklessly failed to carry out their respective duties as herein before set forth, and for any breach thereof, committed professional malpractice."

This paragraph alleges the various omissions on the part of the defendants as violations of the aforementioned duties. The allegation of a failure to act when one is under a duty to do so is a sufficient allegation of breach of duty in a medical malpractice action. *Fortner v Koch,* 277 Mich 429; 269 NW 222 (1936). The allegations here are sufficient to establish the breach element of plaintiff's claim.

The third element which plaintiff was required to allege was the "causal relation between the breach of duty and the injuries complained of". *Simonelli, supra,* 644. Defendants argue that paragraph 85 of the complaint fails to sufficiently aver causation. We agree. That paragraph states:

"85. That each one of the defendants by performing each one of their respective duties set forth herein, would have avoided and/or ameliorated some or all of the damages as set forth below."

Defendants, however, overlook paragraph 88 which states in part:

"88. As a direct and proximate result, the aforementioned acts and omissions of the defendants Fortino, Williams and Schmidt caused Genevieve's premature death and unnecessary pain and suffering and, along with defendant Drescher, caused Genevieve, plaintiff and their children to suffer the following losses and damages, past, present, future and permanent."

The paragraph then lists several elements of dam-

age. The allegations contained in paragraph 88 satisfy the causation element.

Lastly, paragraph 88 contains sufficient allegations of damage to satisfy that element of plaintiff's cause of action. The parties do not argue to the contrary.

To summarize, taking the factual allegations, along with any reasonable inference, as true, *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 337-338; 274 NW2d 58 (1978), we are unable to conclude that plaintiff's cause of action is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover with respect to these defendants. *Crowther, supra.* We hold that the complaint properly alleges a legal cause of action for medical malpractice under the standards set forth in *Simonelli v Cassidy, supra.* Accordingly, the summary judgments in favor of these defendants were improvidently granted. Those judgments are reversed.

The disposition of this issue renders unnecessary a discussion of the remaining issues on appeal which relate to defendants, Drs. Fortino, Williams and Schmidt. The case is remanded to the lower court for a trial on the merits with respect to these defendants.

Plaintiff's claim against defendant Dr. Drescher relates to Dr. Drescher's determination as to the cause of Genevieve O'Toole's death. Plaintiff basically claims that Dr. Drescher, in his capacity as an assistant medical examiner for Ingham County, negligently failed to conduct an autopsy of Mrs. O'Toole's body and negligently failed to determine the assertedly proper cause of her death. Plaintiff claimed that as a result of such negligence his, plaintiff's, ability to establish which of several

conditions caused his wife's death was seriously impaired.

The lower court granted Dr. Drescher summary judgment on plaintiff's third amended complaint pursuant to GCR 1963, 117.2(1) on the ground that Dr. Drescher's acts fell within the protection of the governmental immunity statute. MCL 691.1407; MSA 3.996(107).

The liability of a public official for tortious acts committed in the scope of his employment is determined by deciding whether the acts of the official are "discretionary" or "ministerial". *Antkiewicz v Motorists Mutual Ins Co,* 91 Mich App 389, 397; 283 NW2d 749 (1979). Discretionary acts are normally protected under governmental immunity; ministerial acts are not. Prosser, Torts (4th ed), § 132, pp 989-990.

The difference between discretionary and ministerial acts is one of degree. Discretionary acts are those involving a latitude of choice. Ministerial acts are those where the public official has little decision-making power during the course of performance. A review of the statute that authorizes a medical examiner to order an autopsy and to declare cause of death indicates that significant discretion is given to the examiner in the performance of his functions. MCL 52.205; MSA 5.953(5). The medical examiner's actions in the present case were discretionary. Those actions, therefore, are covered by the protective cloak of governmental immunity. Plaintiff failed to plead facts in avoidance of immunity. See *Butler v Wayne County Sheriff's Dep't,* 75 Mich App 202, 203; 255 NW2d 7 (1977). The lower court did not err in granting summary judgment in favor of defendant Dr. Drescher.

Affirmed in part; reversed in part. The case is

remanded to the trial court for further proceedings consistent with this opinion. No costs.

Allen, J., concurred.

M. J. Kelly, J. *(dissenting).* I would affirm the trial court's grant of summary judgments in favor of all defendants. Plaintiff's fourth amended complaint is so contradictory and nonspecific with regard to the elements of duty, breach and causation as to render it useless for purposes of informing defendants of the charges against them. See GCR 1963, 111.1. He has set his shot pattern so wide as to miss the target entirely. He has failed to plead any specifics with regard to an accepted method of treatment of breast cancer patients as required by *Simonelli v Cassidy,* 336 Mich 635; 59 NW2d 28 (1953), and *Haase v DePree,* 3 Mich App 337, 341; 142 NW2d 486 (1966).

Paragraphs 80 and 81 of the complaint, each consisting of several subparagraphs, delineate duties allegedly owed to the deceased by defendant Fortino, but there is a notable absence of specific allegations as to the existence or manner of breach of these duties. The majority of the preceding paragraphs consist of factual statements regarding the history, diagnosis and treatment of the patient without any indication that the acts or omissions were negligent.

Furthermore, the complaint is devoid of specific averments pertaining to defendants Williams or Schmidt. Paragraph 82 sets forth over one dozen duties allegedly owed to the deceased and plaintiff by all three physicians even though each is involved in a distinct field of medical practice and each was responsible, therefore, for separate and distinct aspects of the patient's care. There is absolutely no indication of what the surgeon or

oncologist, in their individual capacities, negligently did or failed to do during the course of treatment of the patient.

This same paragraph (82) is replete with inconsistencies which effectively nullify the existence of claimed duties. According to subparagraph (i), all three physicians were obligated to "plan, coordinate and implement a program that would minimize the injuries Genevieve suffered as a result of surgery, chemotherapy and radiation treatments". This clearly suggests that at least Dr. Schmidt, the surgeon, and Dr. Williams, the oncologist, were obligated to mutually and simultaneously fashion an effective treatment program; yet, according to subparagraph (j) these same doctors were duty bound to refrain from communicating with each other until their respective duties were performed. As mentioned above, these "respective duties" were not set forth respectively.

Paragraphs 85 and 88 of the complaint, quoted in the majority opinion, purport to demonstrate the causal relationship between defendants' conduct and the decedent's pain, suffering and death by nothing more than an unsupported accusation. How, for example, was the failure of any or all named defendants to examine the patient's left breast causally related to her death by pneumonia? Mere conclusions, without factual allegations to support them, cannot withstand a motion for summary judgment. *Valentine v Michigan Bell Telephone Co,* 388 Mich 19, 30; 199 NW2d 182 (1972), *Sottile v DeNike,* 20 Mich App 468, 472; 174 NW2d 148 (1969).

In addition to the above-mentioned defects, plaintiff's complaint failed to illustrate the manner in which any single defendant's conduct was contrary to or at variance with the generally recog-

nized and accepted standard of care applicable to each special area of practice represented. See *Haase v DePree, supra.* I disagree with the majority's conclusion that, by listing certain jointly owed duties and a breach of "any" of them, plaintiffs satisfied this pleading requirement.

Due to plaintiff's failure to comply with GCR 1963, 111.1 and 117.2(1), summary judgments were properly granted and should not be disturbed by this Court.