## FUHRMANN v HATTAWAY

Docket No. 52382. Submitted June 26, 1981, at Detroit.—Decided
September 10, 1981. Leave to appeal applied for.

Martin Fuhrmann, a Detroit police officer, was shot and seriously
wounded by Chauncy West, who had barricaded himself in a
hotel room. Fuhrmann and his wife, Karen Fuhrmann, brought
an action for damages against the Center for Forensic Psychia-
try, alleging negligence in the release of West from the center
some four months prior to the shooting incident. West had been
sent to the center for evaluation following his acquittal of an
arson charge by reason of insanity. Charles Hattaway, M.D.,
and Dennis Koson, M.D., psychiatrists employed at the center,
had certified that West was mentally ill but not dangerous to
himself or to others. The Center for Forensic Psychiatry was
dismissed by stipulation of the parties because of the exclusive
jurisdiction of the Court of Claims over tort actions against
state agencies. Plaintiffs were allowed to add Doctors Hattaway
and Koson as defendants. The Wayne Circuit Court, Roland L.
Olzark, J., granted summary judgment in favor of the defen-
dant doctors on the basis that they were cloaked with govern-
mental immunity, the discretionary nature of their activities
precluded a finding of liability against them, and they owed no
duty to the plaintiffs. Plaintiffs appeal. *Held:*

1. The Center for Forensic Psychiatry is charged by statute
with the examination and evaluation of the mental condition of
persons who have been acquitted of criminal charges by reason
of insanity. This function is performed solely for governmental
purposes and has no corresponding equivalent in the private
sector. It is, therefore, a governmental function. The personnel

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 73 Am Jur 2d, Summary Judgment § 13.
[2] 72 Am Jur 2d, States, Territories, and Dependences §§ 99-101.
[3] 5 Am Jur 2d, Appeal and Error § 700.
[4] 21 Am Jur 2d, Criminal Law §§ 107-110.
  Validity and construction of statutes providing for psychiatric
  examination of accused to determine mental condition. 32 ALR2d
  434.
[5, 6] 72 Am Jur 2d, States, Territories, and Dependencies § 104.

employed by the center in such examination and evaluation are acting within the scope of the governmental function and are thereby cloaked with governmental immunity.

2. The activities of the defendants were not merely ministerial in nature, but clearly were of a discretionary nature. The defendants, therefore, were protected by governmental immunity from tort liability.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM — COURT RULES.

A motion for summary judgment based on failure to state a claim upon which relief may be granted challenges the legal sufficiency of the pleadings; all well-pleaded allegations of fact must be taken as true and the proper inquiry is whether the claims made are so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. GOVERNMENTAL IMMUNITY — AVOIDANCE OF IMMUNITY — PLEADING.

A plaintiff faced with a defendant's motion for summary judgment based upon governmental immunity has the burden of pleading facts in avoidance of that immunity.

3. APPEAL — ABANDONMENT OF CLAIM.

A party's claim on appeal will be considered to have been abandoned where the party submits no authority in support of the claim.

4. MENTAL HEALTH — CENTER FOR FORENSIC PSYCHIATRY — GOVERNMENTAL FUNCTIONS — GOVERNMENTAL IMMUNITY.

The Center for Forensic Psychiatry performs a governmental function in the examination and evaluation of the mental condition of persons acquitted of criminal charges by reason of insanity; likewise, the personnel employed by the center in such activities are acting within the scope of a governmental function and, therefore, are cloaked with governmental immunity.

5. GOVERNMENTAL IMMUNITY — DISCRETIONARY ACTS — MINISTERIAL ACTS.

Discretionary acts of a public employee are those of a legislative, executive or judicial nature; ministerial acts are those where a public employee has little decision-making power during the course of performance, rather his conduct is delineated.

6. GOVERNMENTAL IMMUNITY — DISCRETIONARY ACTS — MEDICAL DECISION-MAKING.

 Medical decision-making is inherently discretionary, rather than ministerial, in nature.

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George L. McCargar* and *Craig Atchinson,* Assistants Attorney General, for defendants.

Before: J. H. GILLIS, P.J., and BASHARA and K. N. SANBORN,* JJ.

K. N. SANBORN, J. On March 3, 1976, plaintiff Martin Fuhrmann, who was acting in his employment as a police officer for the City of Detroit, answered a call that an armed man had barricaded himself in a room at the Addison Hotel. During the course of this episode a police chaplain was killed when he was shot by the armed man, Chauncy West. Plaintiff sustained serious, permanent injuries when he, too, was struck by bullets from West's gun.

Earlier, on July 1, 1975, West had allegedly set fire to a vacant house in Detroit. Following his arrest and arraignment on arson charges, West underwent psychiatric evaluation in the Detroit Recorder's Court Psychiatric Clinic. Thereafter, doctors from that facility adjudged him to be mentally incompetent to stand trial.

On July 23, 1975, West was committed to the Center for Forensic Psychiatry. Upon being judged competent to stand trial, West was returned to Detroit, where he was found not guilty by reason

* Circuit judge, sitting on the Court of Appeals by assignment.

of insanity. West was then returned to the Center for Forensic Psychiatry for another evaluation.

The second evaluation was done by defendants Hattaway and Koson, who were acting in their employment as psychiatrists at the center. Both psychiatrists certified that, while West was mentally ill, he was not dangerous to himself or to other persons. Upon receiving a notice from the Wayne County Prosecuting Attorney that no petition would be filed for a court hearing on West's condition, the center released West on November 5, 1975. The shooting incident followed less than four months later.

The initial complaint in this matter was filed January 26, 1977, in Wayne County Circuit Court. Thereafter, by stipulation and court order, the center was dismissed from this case. The stipulation provided that, since plaintiffs' action was against a state agency in tort, exclusive jurisdiction reposed in the Court of Claims.

On January 12, 1978, the circuit judge entered a stipulated order allowing plaintiffs to add Hattaway and Koson as parties defendant.

The plaintiffs asserted that defendants "did negligently release the defendant-decedent Chauncy West, who was then mentally deranged and suffering from severe mental illness and was dangerous to himself as well as to others". It was claimed that, as a proximate cause of the defendants' negligence, West shot Fuhrmann and occasioned his injuries.

The complaint specifically recites that defendants owed a general duty and that they breached the same in this case: (a) by releasing West with knowledge of his homicidal tendencies and of the threats he had made under such circumstances, (b) in failing to examine, diagnose and evaluate West

before his release in accordance with the standard of practice in the community for psychiatrists, (c) in failing to keep West under observation for a sufficient period of time in order to properly diagnose his mental disorders, and (d) in failing to warn the proper authorities of West's homicidal tendencies.

On February 28, 1980, Hattaway and Koson filed a motion seeking a summary judgment of dismissal in their favor pursuant to GCR 1963, 117.2(1). The motion was predicated upon three grounds: (a) that defendants were immune from liability under MCL 691.1407; MSA 3.996(107), (b) that the discretionary nature of their activity precluded a holding of liability against them, and (c) that they owed no duty to plaintiffs.

Following an extensive hearing on May 16, 1980, the circuit court granted the defendants' motion. The present appeal was then filed.

The standard for review of summary judgments based on GCR 1963, 117.2(1), is well established. In citing this subrule, defendants charge that the plaintiffs' complaint fails to state a claim upon which relief may be granted. The motion challenges the legal sufficiency of the complaint and must be evaluated with reference to the context of the complaint alone. All well-pleaded allegations of fact must be taken as true. The proper inquiry is whether the claims made are so clearly unenforceable as a matter of law that no factual development thereunder could possibly justify a right to recovery. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972), and Bashara, *The Elusive Summary Judgment Rule: Sifting Through the Maze,* 1976 Det Col L Rev 396.

Analysis of the substantive issues in this case

must be prefaced by noting that a burden rested upon the plaintiffs to plead facts in avoidance of governmental immunity. *Butler v Wayne County Sheriff's Dep't,* 75 Mich App 202; 255 NW2d 7 (1977), and *Furness v Public Service Comm,* 100 Mich App 365; 299 NW2d 35 (1980). Plaintiffs have attempted to surmount this hurdle in several ways.

It is claimed that defendants owed a special duty to Martin Fuhrmann, as a police officer, because of the frequency with which persons in his capacity would be expected to encounter individuals such as West. Plaintiffs have submitted no authority imposing a higher duty of care toward police officers than is required toward members of the public at large. In this absence, we are constrained to reject the theory upon the ground that it has been abandoned. *Erdman v Yolles,* 62 Mich App 594, 599; 233 NW2d 667 (1975).

A second issue concerns the scope of the aegis of governmental immunity in the case. There is little question that a state mental hospital is clothed with governmental immunity. In *Perry v Kalamazoo State Hospital,* 404 Mich 205, 214; 273 NW2d 421 (1978), Justice MOODY, in concurring, stated that:

"The day-to-day care by an attendant, physician or other employee on the staff of a mental hospital represents a governmental function furthering the public need to segregate, treat and rehabilitate citizens suffering from mental disease who cannot otherwise care for themselves and who often are committed voluntarily or involuntarily through governmental action.

"Accordingly, as public mental hospitals perform an essentially unique activity mandated by legislative action, immunity must be extended as a governmental function under the statute. The proper planning and carrying out of this function can effectively be accom-

plished only by the government. The function is essentially governmental."

The Center for Forensic Psychiatry was established pursuant to 1974 PA 258, § 128; MCL 330.1128; MSA 14.800(128). As part of the center's duties, it must examine and evaluate the present mental condition of each person acquitted of a criminal charge by reason of insanity. The purpose of such examination and evaluation is to determine whether the person meets the criteria for a "person requiring treatment" under MCL 330.1401; MSA 14.800(401). This function is created by statute, is performed solely for governmental purposes and has no corresponding equivalent in the private sector. The Center for Forensic Psychiatry therefore performs a governmental function in such instances.

Likewise, the personnel employed by the center are acting within the scope of a governmental function. As such, they are cloaked with governmental immunity. *Galli v Kirkeby,* 398 Mich 527, 543, 544; 248 NW2d 149 (1976), *Lockaby v Wayne County,* 406 Mich 65, 84; 276 NW2d 1 (1979) (MOODY, J., concurring in part, dissenting in part). This is particularly true in the present case. A contrary holding would result in the center facing extreme difficulty in hiring qualified personnel to perform the center's statutorily appointed tasks and would vitiate the enabling statutes by indirection. This we cannot condone.

Perhaps in anticipation of the foregoing, plaintiffs have attempted to assert that defendants' functions at the center were, at most, ministerial in nature. We do not agree.

The nature of ministerial functions is set forth in *Cook v Bennett,* 94 Mich App 93, 100; 288

NW2d 609 (1979), citing *Wall v Trumball,* 16 Mich 228, 234 (1867), which states that:

"A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. A judicial officer, on the other hand, has certain powers confided to him to be exercised according to his judgment or discretion; and the law would be oppressive which should compel him in every case to decide correctly at his peril."

*Cook, supra,* 100, goes on to state that:

"Discretionary acts are those of a legislative, executive or judicial nature. *Sherbutte v Marine City,* 374 Mich 48, 54; 130 NW2d 920 (1964). Ministerial acts are those where the public employee has little decision-making power during the course of performance, but rather his conduct is delineated."

Plainly, the activities of the defendant psychiatrists are anything but ministerial. The decisions required of these persons are perhaps the ultimate in discretion. To determine the state of a person's psyche is in itself a task requiring great discretion and when this task is conjoined with the even more imposing job of resolving another's liberty, the consequent decision cannot be said to be "ministerial" in any sense of that word.

Plaintiffs strive to circumvent the claim of discretionary activity on defendants' part by asserting that defendants' negligent failure to follow prescribed procedures resulted in their actions being only ministerial in nature. This argument is not supported by citations of authority. The argument is abandoned. *Erdman, supra.*

Finally, there seems to be little doubt that medi-

cal decision-making is inherently discretionary. *O'Toole v Fortino,* 97 Mich App 797, 811; 295 NW2d 867 (1980). This, again, is particularly true in the field of psychiatry.

Based on the foregoing, it is readily apparent that summary judgment of dismissal was properly awarded in this instance.

Affirmed. No costs, a public question being involved.