*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM WATCH and TERYL WATCH,

        Plaintiffs-Appellants,

v

THE GREGORY S. GILMORE TRUST, by
Cotrustees GREGORY S. GILMORE and
JACQUELINE M. GILMORE, JAMES F. CARR,
and DIANE S. CARR,

        Defendants-Appellees.

UNPUBLISHED
October 8, 2019

No. 344775
Mecosta Circuit Court
LC No. 17-023786-CH

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiffs, William Watch and Teryl Watch, appeal as of right an order denying their motion for summary disposition and granting summary disposition to defendants Diane S. Carr, James F. Carr, Gregory S. Gilmore, and Jacqueline M. Gilmore,[1] as well as a later order denying plaintiffs' motion for reconsideration. Plaintiffs contend that they demonstrated the existence of a prescriptive easement over certain property owned by the Carrs, which the Carrs were selling to the Gilmores by way of land contract.[2] We affirm the grant of summary disposition to defendants, but we vacate part of the trial court's ruling.

## I. OVERVIEW

---

[1] The Gilmores participated in this case as cotrustees of a trust, but that fact is not pertinent to the proceedings on appeal.

[2] The Carrs fully participated in the proceedings because they retained an interest in the property, given that the property was being sold by way of land contract. For ease of reference, the Carr/Gilmore property will be referred to as the "Carr property" in this opinion, and the various past and present owners of that property will be referred to as the "Carr property owners."

The Carr property consists of two parcels—an island in Lake Mecosta, in Mecosta County, and a parcel on the mainland containing a boathouse (or garage), a driveway, a boat launch, and a path to the boat launch. The Carr mainland parcel is immediately to the east of Lake Mecosta and has primarily been used for access to the island. The Watch property—which was acquired by plaintiffs in 2007 but has been in the Watch family since the 1940s—is located just south of the Carr mainland parcel. Island Street, a private road, runs along the eastern, non-lakeside edge of the Watch property and the Carr mainland parcel. Historically, the Watch property contained a cottage and a gravel driveway. According to a 2006 survey, the driveway itself technically did not encroach beyond the Watch-Carr property line, but according to William Watch ("William"), ingress and egress from Island Street had always entailed some encroachment onto the Carr driveway area.

In 2008 and 2009, plaintiffs demolished the cottage and the gravel driveway.[3] They constructed a new home with two asphalt driveways, one of which runs directly from Island Street to the new home's garage ("the south driveway"). The other driveway partially crosses the location of the historic gravel driveway, but it opens directly into the Carr property ("the north driveway"). Thus, to access the north driveway from Island Street, one must encroach on the Carr driveway. The south driveway is not at issue in this matter. For ease of reference, the following are surveys of the property, the first in 2006 and the second in 2016:



---

[3] The Watch property also has its own boathouse, which was apparently left untouched.

After the Carr property owners blocked vehicular access to the new north driveway in 2016, plaintiffs filed suit and claimed a prescriptive easement over the Carr driveway and also over the Carr boat launch area and a path leading to the boat launch area. In particular, plaintiffs' amended complaint described "the driveway on the [Carr] Property" as a "Shared Driveway," and they claimed to have acquired a prescriptive easement over, in relevant part, "the Shared Driveway."

In response to cross motions for summary disposition, the trial court found that accessing the north driveway from Island Street involves a larger encroachment, and in a different location, onto the Carr property than the historic encroachment involved with accessing the old gravel driveway. It therefore concluded that plaintiffs had not demonstrated 15 years of continuous use of the relevant portion of the Carr property. Rather, plaintiffs had only shown relevant use since 2008, when the north driveway was constructed. It also concluded that any prescriptive easement that had potentially been established from the historic use of the old gravel driveway was abandoned when plaintiffs destroyed the gravel driveway. The court also rejected plaintiffs' claims regarding various other alleged encroachments onto the Carr property by the Watch family.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120.

## III. LEGAL PRINCIPLES

Although an easement constitutes a property right, it is not a true ownership interest in land. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007). Rather, it is a limited right to use property owned by another, and that use is generally confined to a particular purpose. *Id*. at 130-131. An easement may be established by prescription in essentially the same manner as establishing ownership by adverse possession, except for the requirement of exclusivity. *Matthews v Natural Resources Dep't*, 288 Mich App 23, 37; 792 NW2d 40 (2010). "The plaintiff bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Id*. The "clear and cogent evidence" standard calls for "more than a preponderance of evidence, approaching the level of proof beyond a reasonable doubt." *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988).

"A prescriptive easement results from open, notorious, adverse, and continuous use of another's property for a period of 15 years." *Matthews*, 288 Mich App at 37. The continuity need not be strictly literal, but rather must only be consistent with "the nature and character of the right claimed" and "the nature of the use to which its enjoyment may be applied." *von Meding v Strahl*, 319 Mich 598, 613-614; 30 NW2d 363 (1948) (quotation omitted). If all of the

elements are otherwise satisfied, a prescriptive easement is created and vests immediately upon crossing the fifteen-year threshold, not when an action regarding title is brought. *Matthews*, 288 Mich App at 36-37; *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192, 196; 912 NW2d 161 (2018). Successive owners may "tack" their periods of adverse use for the purpose of satisfying the fifteen-year requirement, if those successive owners are in privity. *Marlette*, 501 Mich at 203. Once the easement is established, it runs with the land to subsequent owners, irrespective of their privity. *Id*. at 196, 206.

## IV. HISTORIC DRIVEWAY EASEMENT

For purposes of resolving this appeal, it appears to be functionally undisputed that plaintiffs had—at least in theory—an established prescriptive easement derived from the Watch family's use of the historic gravel driveway. In any event, we would presume, without deciding, that such an easement had been established. Nevertheless, plaintiffs' complaint clearly sought an easement over the *entire* Carr driveway. In addition, the complaint alleged that the former Watch family cottage "was accessed by a gravel driveway that emptied onto the [Carr driveway], so that anyone entering the Watch Property from Island Street had to first turn onto the [Carr driveway] to access the gravel driveway." It is clear from the 2006 survey that ingress and egress would probably entail some encroachment onto the Carr driveway. However, presuming the necessity of that encroachment, it would only occur at approximately the point where the Carr driveway met Island Street. The most cursory comparison of the survey maps shows that persons driving to the new north asphalt driveway from Island Street and staying on asphalt (as opposed to driving on Watch property grass) will necessarily encroach on a different—and significantly larger—area of the Carr property than any encroachment historically required to access the old gravel driveway.

Plaintiffs also alleged the use of the Carr property to "back[] in or turn[] around." There was some evidence tending to suggest that it was not historically clear exactly where the boundary lay between Island Street and the Carr Driveway. We therefore again presume, but do not decide, that plaintiffs may have acquired prescriptive rights to make some limited, incidental use of part of the Carr driveway where the driveway meets Island Street. Nevertheless, those activities would also have occurred in approximately the same area as any incidental encroachment from the historic use of the old gravel driveway. Thus, any such prescriptive rights are again irrelevant to the different and expanded scope of use required by the new north asphalt driveway.

In *Engel v Gildner*, 248 Mich 95, 97-99; 226 NW 849 (1929), the defendants had been using part of the plaintiffs' land as a driveway for 25 years. When the plaintiffs extended their driveway, the defendants sought to use more of the plaintiffs' land. *Id*. at 98-99. The Court found that the defendants had established a prescriptive right to continue their historic use of the plaintiffs' driveway, but they had not established a right to use the extension. *Id*. at 99-100. Plaintiffs seek precisely the kind of expanded use that *Engel* forbids. See also *Heydon v MediaOne*, 275 Mich App 267, 271; 739 NW2d 373 (2007) ("A prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment" (internal quotation omitted)), and *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957) ("the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden").

The new north driveway unambiguously requires an entirely different and significantly greater use of the Carr driveway than was required by the historic gravel driveway. The trial court correctly concluded that because the new north driveway was installed only in 2008, plaintiffs "failed to show a continuous use of the claimed easement related to the new driveway for the statutory period of 15 years." Defendants were entitled to summary disposition in their favor regarding the easement sought by plaintiffs.

## V. EASEMENT OVER LESS THAN THE ENTIRE CARR DRIVEWAY

In plaintiffs' motion for reconsideration, they asserted for the first time that notwithstanding their claim to an easement over the entire Carr driveway, there were at least questions of fact whether they had established an easement over a smaller portion of the Carr driveway. Denial of a motion for reconsideration is appropriate if the motion rests "on a legal theory and facts which could have been pled or argued prior to the trial court's original order." *Charbeneau v Wayne Co Gen Hosp,* 158 Mich App 730, 733; 405 NW2d 151 (1987). Plaintiffs' amended complaint unambiguously contended only that they had prescriptive rights over the entire Carr driveway, and they never sought to further amend their complaint to add a theory pertaining to a more limited scope of prescriptive rights. See MCR 2.111(B)(2). We conclude that plaintiffs' amended complaint did not adequately place defendants on notice of a claim for a limited easement over a portion of the Island Street end of the Carr driveway. See *O'Toole v Fortino,* 97 Mich App 797, 801; 295 867 (1980). The trial court properly declined to consider whether plaintiffs had prescriptive rights to less than the entirety of the Carr driveway.[4]

## VI. ABANDONMENT OF HISTORIC EASEMENT

Plaintiffs additionally contend that the trial court erred in concluding that they had abandoned their historic easement. Plaintiffs are correct that abandonment requires an affirmatively manifested intent, beyond mere nonuse, to relinquish a particular right. *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc,* 472 Mich 359, 385; 699 NW2d 272 (2005). However, we conclude that the trial court erred by failing to deem the issue moot, and we therefore do not decide the substantive merits of plaintiffs' argument. An issue is moot if a court cannot legally grant any practical relief and is limited to "abstract questions of law." *TM v MZ,* 501 Mich 312, 317; 916 NW2d 473 (2018) (internal quotation omitted). As discussed above, any historic easement derived from the use of the old gravel driveway would not permit plaintiffs to access the new north asphalt driveway. As also discussed, plaintiffs did not advance a theory in their complaint pertaining to less than the entire Carr driveway. Any prescriptive easement over a portion of the Carr driveway based on the old gravel driveway would therefore be of no practical value to plaintiffs. Whether plaintiffs abandoned any rights they had acquired is merely an "abstract question of law" that the courts should generally refrain from entertaining. *Id*. We therefore vacate the trial court's rulings to the limited extent that the trial court held plaintiffs to have abandoned any historic prescriptive rights that they had acquired as of 2006.

---

[4] We reiterate that although we have presumed the establishment of a limited easement, nothing in this opinion should be construed as a decision on the merits of such an easement.

## VII.  OTHER ARGUMENTS REGARDING CARR DRIVEWAY

Plaintiffs claimed in their complaint that, in addition to using Carr land in connection with accessing the old gravel driveway, they historically used the Carr driveway for "general recreational use."  William testified that

> when I was a kid we used it to bounce balls on and throw footballs and do – it was an open area, whereas, opposed at the time as you saw some pictures, this lot was fairly wooded.  There was a lot of trees in that area.  We would go over there occasionally and throw a ball around.  As my kids got to the [sic] older they did the same thing.   When it became paved it it [sic] was also a place for skateboarding or used for hard surface toys.

We have found little, if any, further evidence in the record concerning plaintiffs' "general recreational use" of the Carr driveway.  Taking plaintiffs' evidence at face value, however, such occasional and vaguely-described use of the property is insufficient to acquire prescriptive rights.

We do not think that occasionally playing on another person's driveway constitutes "an act manifesting a purpose to take possession as owner, and does not constitute actual possession," nor does it "warn the owner of record title" that the use is adverse.  See *Doctor v Turner*, 251 Mich 175, 186-187; 231 NW 115 (1930) (discussing adverse possession) (internal quotations and citations omitted).   Likewise, we do not think such occasional playing is sufficiently definite to warrant a permanent encumbrance on the Carr driveway.  See *Village of Manchester v Blaess*, 258 Mich 652, 655-656; 242 NW 798 (1932) (discussing the acquisition of a prescriptive right for a highway).  Gregory Gilmore testified that construction of a house on the mainland would be prohibited if plaintiffs' request for relief were to be granted.  Plaintiffs are, essentially, attempting to use evidence of prior use over some indefinite portion of the Carr driveway by playing children to claim an easement over the entire driveway.  The trial court properly rejected that claim.

Plaintiffs also claimed use of parts of the Carr driveway for parking and for loading and unloading items into and from vehicles.  We fail to perceive a distinction between this claim and plaintiffs' claimed historic use of the old gravel driveway.  The Watch family allegedly also used a portion of the Carr property close to the old gravel driveway, and William admitted that the area "grew and expand[ed] depending on the years."  This claim thus fails for indefiniteness, much like the claimed easement based on children playing.  In any event, neither has any readily apparent relevance to the location of the new north asphalt driveway.

## VIII.  EASEMENT OVER BOAT LAUNCH AND ASSOCIATED PATH

We find it unclear whether plaintiffs continue to seek an easement over the Carr boat launch and its associated path independent of an easement over the Carr driveway.  Nonetheless, the trial court did not err by concluding that their claim for the boat launch and path was deficient as a matter of law.

There was evidence that the Watch family had made some use of the boat launch area for a 15-year period.  However, any such use of the boat launch would differ radically from the

Watch family's use of the old gravel driveway: the latter was presumably necessary for the Watches to access their own land, whereas the boat launch was merely for recreation. Thus, establishing a prescriptive right to continue using the boat launch requires a significantly greater quantum of hostility and notoriety "than its occasional use for [their] own convenience." *Menter v First Baptist Church of Eaton Rapids*, 159 Mich 21, 24; 123 NW 585 (1909). Under those circumstances, the adverse use of property must actually be known to the true owner, or the use must be so notorious that the true owner must be considered on notice of that use. *Burns v Foster*, 348 Mich 8, 15; 81 NW2d 386 (1957); *Rozmarek v Plamondon*, 419 Mich 287, 293; 351 NW2d 558 (1984). Thus, possession sufficient to establish a prescriptive easement must be "so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim of title adversely to his, so that if the true owner remains in ignorance it is his own fault." *Marlette*, 501 Mich at 211 (quotation marks and citations omitted; emphasis removed).

The evidence indicates that Carr property owners may have actually observed the Watch family using the boat launch twice, which is insufficient to suggest actual notice of meaningfully *adverse* use by the Watch family. As with the children playing on the Carr driveway, we are unpersuaded that occasionally launching boats from the Carr boat launch is sufficiently notorious adverse use to place the Carr property owners on notice. Furthermore, William admitted that Gregory Gilmore had granted him permission to use the boat launch area in 2016. Permissive use is, by definition, not hostile. See *Jonkers v Summit Twp*, 278 Mich App 263, 273; 747 NW2d 901 (2008). The fact that permission was granted further suggests a lack of hostility. As noted, a plaintiff "bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Matthews*, 288 Mich App at 37. Plaintiffs failed to present sufficient evidence of entitlement to the boat launch area and associated path to survive defendants' motions for summary disposition.

## IX. CONCLUSION

For the reasons set forth above, we vacate the trial court's orders to the extent the trial court addressed and decided whether plaintiffs had abandoned any prescriptive rights they might have acquired from the historic use of the old gravel driveway. In all other respects, the trial court is affirmed. Defendants, being the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause