PEOPLE v HOLLEMAN

Docket No. 70193. Submitted January 11, 1984, at Grand Rapids.—
Decided March 29, 1984.

Defendant, Richard J. Holleman, was charged in the Allegan
Circuit Court with breaking and entering an occupied dwelling
with intent to commit larceny and with the arson of the same
dwelling. Defendant was convicted by a jury on the breaking
and entering charge and acquitted on the arson charge. The
trial court, George R. Corsiglia, J., sentenced defendant to from
10 to 15 years imprisonment. Defendant appeals alleging sev-
eral errors including the trial court's denial of his request for a
continuance when Henry Dykstra, the owner of the home and
the property allegedly taken, was not available to testify due to
his hospitalization. *Held:*

1. In view of the circumstances of this case, it was error to
rely solely on the testimony of Dykstra's daughter to establish
that items belonging to Dykstra were taken from Dykstra's
house as a basis for a finding of the necessary intent to commit
larceny. The daughter lacked personal knowledge of whether
the items had in fact disappeared in the course of a breaking
and entering. A continuance should have been granted.

2. The trial court's conclusion that Dykstra's testimony
would be cumulative testimony is unsupported. The trial court
should have obtained information regarding the length of Mr.
Dykstra's incapacity prior to denying the request for a continu-
ance.

3. The facts of this case indicate that more than a mere
technicality was involved in regard to defendant's claim that it
was an abuse of discretion to deny him a continuance.

4. Defendant's request for a continuance was not untimely.
There were no previous delays attributable to the defendant.

5. In light of the importance of Dykstra's testimony to
establish larceny and the timing of the discovery of his unavail-

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Continuance §§ 3, 4, 43-47.
[2] 31 Am Jur 2d, Expert and Opinion Evidence §§ 14, 34.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 56.

ability, the continuance should have been granted and a determination made as to how long he would continue to be unavailable.

6. No 180-day violation was likely if the continuance was granted.

7. Dykstra's daughter's speculative testimony that some items were missing did not necessarily establish the element of intent to commit larceny.

8. The trial court did not abuse its discretion in ruling that a hypothetical question propounded to a doctor who had treated the defendant was speculative and beyond the range of expert testimony.

9. Defendant's claim regarding the trial court's alleged improper consideration in sentencing of a prior conviction of the defendant which had been reversed was rejected.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — TRIAL — CONTINUANCES.

A motion for a continuance is a matter for the discretion of the trial court; considerations which should guide in the exercise of such discretion in a criminal case are: (1) the origin and nature of the right asserted; (2) the defendant's reasons for asserting that right; (3) the defendant's negligence or untimely assertion of the right; and (4) the extent to which previous delays or disruptions are attributable to the defendant.

2. EVIDENCE — WITNESSES — PERSONAL KNOWLEDGE — RULES OF EVIDENCE.

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter (MRE 602).

3. WITNESSES — EXPERT WITNESSES — HYPOTHETICAL QUESTIONS.

Hypothetical questions to expert witnesses should generally be based on facts in the record.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Fred R. Hunter, III,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Herb Jordan),* for defendant on appeal.

Before: MacKenzie, P.J., and Beasley and K. B. Glaser,* JJ.

Per Curiam. Defendant, Richard John Holleman, was convicted by a jury of breaking and entering an occupied dwelling with intent to commit larceny, MCL 750.110; MSA 28.305. He was sentenced to serve not less than 10 nor more than 15 years in prison. Defendant appeals as of right, raising four issues.

The charges arose out of the alleged breaking and entering of a home in Holland, Michigan, during which an arson allegedly occurred. Defendant was also charged with arson, but was acquitted of that charge by the jury.

On appeal, defendant's first claim is that the trial court's denial of his request for a continuance was error. On the morning of trial, defense counsel learned that Henry Dykstra, owner of the home and of the property allegedly taken, would not be available to testify. The prosecution informed the court that Dykstra had been hospitalized for heart disease and produced two doctors' letters regarding Dykstra's illness. The prosecutor stated that he had not previously notified defendant that Dykstra would not appear because he had hoped the witness's health would improve by the date of trial.

Defense counsel responded that, although he had noted a doctor's letter in the file concerning Dykstra's illness, he was not aware that the witness would be unable to testify at trial. He requested a continuance on the ground that defendant would be denied his right of confrontation if the court proceeded without Dykstra. The court denied the motion, without obtaining an estimate of how long Dykstra would be unavailable. The

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

trial judge said that his testimony would be cumulative, as Dykstra and his wife were in New Mexico when the incident occurred and he understood that witnesses present at the scene could testify as to the house's contents and condition.

To establish its case, the prosecution relied on the testimony of Lois VandenBosch, Dykstra's daughter, and of Arlene VandenBosch, the daughter's sister-in-law, who had been checking the home daily while the Dykstras were out of town. Arlene VandenBosch testified that she had found everything secure when she checked the home the night before the fire. She said that someone called her the next morning and told her that the house was on fire. After the fire had been put out, Arlene testified that she, her husband, Lois and Lois's husband went into the home to remove valuables because there was no glass in the windows. Among other items, they removed drawers from the master bedroom which were intact and which contained jewelry. Although Arlene testified that she would not be aware if anything was missing from the drawers, she did state that it was apparent that these drawers had not been open during the fire because their contents were not black.

Lois VandenBosch testified that some of her father's jewelry was missing, including tie clasps, cuff links and a vest chain. She testified that, "I think a couple of watches" were also missing. A number of other valuables, including her mother's jewelry, were left undisturbed. On cross-examination, Lois stated that, though she had been at the house on the day her parent's left for vacation, she was only "pretty sure" that they had not taken the missing items with them. She also said that later she had confirmed this information with her father.

Generally, a motion for a continuance is a mat-

ter for the discretion of the trial court.[1] In *People v Charles O Williams,*[2] the Supreme Court discussed the review of a trial court's discretion in denying a continuance and quoted the United States Supreme Court, stating:

" 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. *The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States,* 352 US 385 [77 S Ct 431; 1 L Ed 2d 415 (1957)].' (Emphasis added.)" (Quoting *Ungar v Sarafite,* 376 US 575, 589; 84 S Ct 841; 11 L Ed 2d 921 [1964].)

In the *Williams* case, the Supreme Court weighed four factors to determine that there had been an abuse of discretion that required reversal and grant of a new trial. These four factors were stated as follows by this Court in *People v Eddington:*[3]

"Our Supreme Court has articulated the considerations which should guide the exercise of the trial court's discretion when faced with a request for a continuance in a criminal case: (1) the origin and nature of the right asserted, (2) the defendant's reasons for asserting that right, (3) the defendant's negligence or untimely assertion of the right, and (4) the extent to which previous delays or disruptions are attributable to the defendant."

Defendant contends that his right of confrontation was violated. The prosecution responds that defendant had no constitutional right of confronta-

[1] *People v Merritt,* 396 Mich 67; 238 NW2d 31 (1976), *reh den* 396 Mich 977 (1976); *People v Parker,* 76 Mich App 432; 257 NW2d 109 (1977); *People v Strieter,* 73 Mich App 306; 250 NW2d 562 (1976).

[2] 386 Mich 565, 575; 194 NW2d 337 (1972).

[3] 77 Mich App 177, 186; 258 NW2d 183 (1977), *lv den* 402 Mich 944 (1978).

tion where Dykstra was concerned, since Dykstra never testified against defendant. Instead, the testimony of his daughter was used to establish that items were taken. However, as defendant points out, the prosecution based the assertion that the breaking and entering was done with the intent to commit larceny on the fact that some of Dykstra's possessions were actually taken. We believe that relying solely on the testimony of Lois Vanden-Bosch to establish this fact was error, in view of the circumstances.

Dykstra was endorsed on the information as a witness and defendant anticipated his presence at trial. There is no indication as to what his testimony might have been and, therefore, the trial judge's conclusion that his testimony would be cumulative appears to be unsupported. There was no evidence introduced regarding the length of Mr. Dykstra's incapacity. This information should have been obtained by the trial judge prior to denying the request for a continuance.

Furthermore, this is not the typical breaking and entering case. The fact that defendant was being tried for both the arson and breaking and entering of the same house, the fact that there was a considerable trail of blood in the house, the fact that the prosecution relied on the alleged removal of personal proeprty as the basis for a finding of the necessary element of intent to commit larceny, and the fact that the jury found defendant not guilty of arson, raises defendant's claim that it was an abuse of discretion to deny him a continuance beyond that of a mere technicality.

As to the third and fourth elements of the *Williams, supra,* test, we do not believe that the request for a continuance was untimely, nor were there previous delays attributable to defendant. If

the witness was unavailable due to continuing long-term illness, defendant should have been informed of that fact prior to the date of trial. In light of the importance of Dykstra's testimony to establish larceny and the timing of the discovery of his unavailability, the continuance should have been granted and a determination made as to how long he would continue to be unavailable.

The prosecution's comment that there should be no continuance as "we are getting close to the 180-day mark" was irrelevant. As defendant requested the continuance and the prosecution had made a good faith effort to bring the case to trial, no 180-day violation was likely.[4]

In closing argument, the prosecutor argued that defendant's intent to commit larceny was established by Lois's testimony that some items were missing. Thus, the possible importance of denying the continuance was accented. We do not agree that this speculative testimony necessarily established the element of intent to commit larceny.

Defendant's next argument is a continuation of the first. He contends that it violated his constitutional right of confrontation when the prosecution was permitted to establish theft through a witness who lacked personal knowledge of whether the items had in fact disappeared in the course of a breaking and entering. As indicated, we hold that this was error and that a continuance should have been granted rather than opting to proceed without the witness.

MRE 602 provides in part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter". The issue was not, as the prosecution contends, a question of

---

[4] *People v Hendershot,* 357 Mich 300; 98 NW2d 568 (1959).

Lois's credibility, which was properly before the jury, but whether she had personal knowledge of whether the items had disappeared in the alleged breaking and entering. On that point, this record is shaky at best.

Testimony from several witnesses who entered the Dykstra home after the fire indicated that there was an extensive amount of blood throughout the house. One police officer noted a trail of blood continuing down the street and, the following day, traced it up Pine Avenue from 39th Street near the Dykstra home to 32nd Street and into defendant's backyard. Defendant was arrested that day when he was observed several blocks from the Dykstra home with a bandaged elbow and reddish-brown stained tennis shoes. The prosecution's theory was that defendant had cut his elbow on a screen when entering the Dykstra basement. Defendant's father testified that the blood near his house was his own from a cut he received while trimming rosebushes.

Defendant's third argument on appeal is that the trial court erred in refusing to permit Dr. Edmundo Sanchez, who had treated defendant for a small laceration of the elbow on the day of the fire, to answer the following question:

"Doctor, hypothetically speaking, if I told you that there had been a patient that had lost an extreme amount of blood to the extent that there was clotting, bad clotting, pools of blood, spatters of blood almost a mile in length, blood found in a number of rooms in a house, blood soaked carpeting, blood soaked clothing, numerous splotches of wet blood found in various locations on the pavement; could you form an opinion as to whether or not that would be consistent with the injuries you observed on Mr. Holleman?"

Prior to this there was no testimony estimating

the quantity of blood present at the scene; no one was able to do so. The doctor did testify that when he treated him, the defendant did not appear to display symptoms of significant blood loss. In general, hypothetical questions should be based on facts in the record.[5] We decline to find an abuse of discretion in the trial court's ruling that the question was speculative and beyond the permissible range of expert testimony.

Last, defendant claims that he is entitled to resentencing because defense counsel referred to defendant's prior conviction for being an inmate in possession of a weapon. This conviction, which was referred to in the presentence report, had been reversed. Defendant contends that an indirect reference was made to this conviction when the sentencing judge said that there are those who believe that an incarcerated person can "isolate himself from that type of environment in prison". Defendant's implication is that the reversed conviction was improperly relied upon in sentencing. The sentencing transcript shows that defendant himself referred to his extensive past incarcerations. Nothing in the record indicates that in sentencing defendant the court gave consideration to the conviction. We reject defendant's claim; resentencing would not be required.

In summary, for the reasons indicated, we reverse defendant's conviction of breaking and entering with intent to commit larceny and return this case for a new trial.

Reversed and remanded.

---

[5] *Durbin v K-K-M Corp,* 54 Mich App 38; 220 NW2d 110 (1974); *Serafin v Peoples Community Hospital Authority,* 67 Mich App 560, 566; 242 NW2d 438 (1976), *lv den* 397 Mich 880 (1976).